1

2

3

4

5

6

7

8        # UNITED STATES DISTRICT COURT

9        EASTERN DISTRICT OF CALIFORNIA

10

11   **CHRISTOPHER HARBRIDGE,**          **Case No.  1:10-cv-00473-AWI-JLT (PC)**

12            **Plaintiff,**             **FINDINGS AND RECOMMENDATION THAT**
                                         **DEFENDANTS' MOTION FOR SUMMARY**
13        **v.**                         **JUDGMENT BE GRANTED IN PART AND**
                                         **DENIED IN PART**
14   **HICKMAN, et al.,**
                                         **(Doc. 103)**
15            **Defendants.**
                                         **OBJECTIONS DUE WITHIN 30 DAYS**
16

17        Plaintiff is proceeding in this action against a number of Defendants on claims based on

18   events that occurred over the course of three months.  He claims the events stem from his refusal

19   to accept a cellmate.  For the reasons discussed below, the Court recommends Defendants' motion

20   for summary judgment be **GRANTED** in part and **DENIED** in part.[1]

21   **I.  Plaintiff's Claims**

22        In this action, Plaintiff is proceeding on the following claims:  **Claim 1** against

23   Defendants Trimble, Williams, Brown and Reeves, Munoz and Singleton for deliberate

24   indifference related to the temperature of his cell; **Claim 9** against Defendants Brown, Reeves,

25

26   _____

     [1]The Court has carefully reviewed and considered all arguments, points and authorities, declarations, depositions,
27   exhibits, statements of undisputed facts and responses thereto, objections, and other papers filed by the parties related
     to this motion.  The fact that the Court does not refer to an argument, document, paper, or objection does not mean
     the Court did not consider it.  Rather, the Court only comments here on the admissible evidence and on the material
28   arguments.

and Collier for denial of exercise due to a lack of appropriate clothing for the weather; **Claims 12, 13, and 14** against Defendants Redding and Franco for use of excessive force and against Defendant McBride for failing to intervene on Plaintiff's behalf; **Claim 16** against Defendants McBride and Herrera for holding Plaintiff in a standing-room only cage for over an hour despite knowing his ankle was likely broken; and **Claim 17** against Defendants Hall, McBride, Herrera, Lee and Tucker for deliberate indifference to his medical condition.

## II. <u>Defendants' Motion</u>

Defendants seek summary judgment on following basis:  (1) that Plaintiff did not exhaust his administrative remedies on his claims in this action, other than his claim against Defendant Tucker (Doc. 103-1, MSJ, at pp. 15-19); (2) Claims 1 and 9 are not supported by an objectively serious risk and Defendants did not know that Plaintiff was exposed to cold temperatures (*id.*, at pp. 19-22); (3) there is no evidence that Sgt. McBride knew of and disregarded a substantial risk to Plaintiff's safety in Claims 12 and 14 (*id.*, at pp. 22-23); (4) there is no evidence shows that Lt. Herrera and Sgt. McBride were deliberately indifferent to Plaintiff's serious medical need in Claim 16 (*id.*, at pp. 23-24); (5) there is no evidence to show that LVN Hall, Sgt. McBride, and C/O Lee ignored Plaintiff's serious medical need, or interfered with his access to medical care in Claim 17 (*id.*, at pp. 24-25); and (6) that all of the Defendants are entitled to qualified immunity (*id.*, at pp. 25-28).

## III. <u>Summary Judgment Standards</u>

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).  An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.,* 818 F.2d 1422, 1436 (9th Cir. 1987).  The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a *pro se* prisoner. *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

1    In addition, Rule 56 allows a court to grant summary adjudication, or partial summary

2    judgment, when there is no genuine issue of material fact as to a particular claim or portion of that

3    claim.  Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir.

4    1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final

5    determination, even of a single claim . . .") (internal quotation marks and citation omitted).  The

6    standards that apply on a motion for summary judgment and a motion for summary adjudication

7    are the same.  *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F.Supp.2d 1192, 1200

8    (S.D. Cal. 1998).

9    Under Rule 56, each party's position must be supported by (1) citing to particular parts of

10   materials in the record, including but not limited to depositions, documents, declarations, or

11   discovery; or (2) showing that the materials cited do not establish the presence or absence of a

12   genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.

13   Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the

14   record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen*

15   *v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v.*

16   *Navajo County, Ariz.,* 609 F.3d 1011, 1017 (9th Cir. 2010).

17   Defendants do not bear the burden of proof at trial and, in moving for summary judgment

18   on the merits of Plaintiff's claims, they need only prove an absence of evidence to support

19   Plaintiff's case.  *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010)

20   (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  If Defendants meet

21   their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating

22   the existence of genuine issues for trial."  *In re Oracle Corp.,* 627 F.3d at 387 (citing *Celotex*

23   *Corp.,* 477 U.S. at 323).  This requires Plaintiff to "show more than the mere existence of a

24   scintilla of evidence."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  An

25   issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for

26   the non-moving party, while a fact is material if it "might affect the outcome of the suit under the

27   governing law."  *Anderson*, 477 U.S. at 248; *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422,

28   1436 (9th Cir. 1987).

1    On the other hand, whether Plaintiff has exhausted his claims under the PLRA is an

2  affirmative defense that Defendants bear the burden of proving.  *Wyatt*, 315 F.3d at 1119.

3  "[T]here can be no 'absence of exhaustion' unless some relief remains 'available,' a defendant

4  must demonstrate that pertinent relief remained available, whether at unexhausted levels of the

5  grievance process or through awaiting the results of the relief already granted as a result of that

6  process." *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005) *ref. Brown v. Croak*, 312 F.3d 109,

7  112 (3d Cir.2002) (holding that because failure to exhaust is an affirmative defense under the

8  PLRA, a complaint cannot be dismissed where the prisoner submits evidence showing, and the

9  defendants do not disprove, that no remedy was "available").  Relevant evidence includes

10  "statutes, regulations, and other official directives that explain the scope of the administrative

11  review process; documentary or testimonial evidence from prison officials who administer the

12  review process; and information provided to the prisoner concerning the operation of the

13  grievance procedure in this case, such as in the response memoranda in these cases.  With regard

14  to the latter category of evidence, information provided the prisoner is pertinent because it

15  informs [a] determination of whether relief was, as a practical matter, 'available.'"  *Id.*, at 937.

16    Similar to a motion for summary judgment on the merits of Plaintiff's claims, if

17  defendants meet their initial burden regarding exhaustion issues, the burden then shifts to Plaintiff

18  "to come forward with evidence showing that there is something in his particular case that made

19  the existing and generally available administrative remedies effectively unavailable to him."

20  *Albino,* 747 F.3d at 1172, citing *Hilao v. Estate of* Marcos, 103 F.3d 767, 778 (9th Cir. 1996)

21  ("[T]he burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective,

22  unobtainable, unduly prolonged, inadequate, or obviously futile.")  Plaintiff must meet this

23  burden by showing ". . . more than the mere existence of a scintilla of evidence."  *In re Oracle*

24  *Corp.,* 627 F.3d at 387 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505

25  (1986)).  "However, as required by *Jones*, the ultimate burden of proof remains with the

26  defendant." *Albino*, 747 F.3d at 1172.

27    In judging the evidence at the summary judgment stage, the Court may not make

28  credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless Inc.,* 509

1  F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all

2  inferences in the light most favorable to the nonmoving party and determine whether a genuine

3  issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v.*

4  *City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted),

5  *cert. denied*, 132 S.Ct. 1566 (2012).  The court may not draw inferences out of thin air. Rather,

6  the nonmoving party must produce a factual predicate from which the inference may reasonably

7  be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

8  *aff'd*, 810 F.2d 898 (9th Cir. 1987).

9        Further "[a] verified complaint may be treated as an affidavit to oppose summary

10  judgment to the extent it is 'based on personal knowledge' and 'sets forth specific facts

11  admissible in evidence.'"  *Keenan v. Hall*, 83 F.3d 1083, 1090 n. 1 (9th Cir. 1996) (quoting

12  *McElyea v. Babbitt*, 833 F.2d 196, 197-98 n. 1 (9th Cir. 1987) (per curiam)), *amended by* 135

13  F.3d 1318 (9th Cir. 1998); *see also Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004); *Lopez*

14  *v. Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc); *Schroeder v. MacDonald*, 55 F.3d

15  454, 460 (9th Cir. 1995); *Lew*, 754 F.2d at 1423.  If Plaintiff states that the facts in the complaint

16  are true under penalty of perjury, the pleading is "verified."  *Schroeder*, 55 F.3d at 460 n. 10.

17  **V.  <u>Analysis</u>**

18        **A.  <u>Eighth Amendment -- Conditions of Confinement</u>**

19        The Eighth Amendment protects prisoners from inhumane methods of punishment and

20  conditions of confinement.  *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465

21  F.3d 1041, 1045 (9th Cir. 2006).  Prison officials have a duty to ensure that prisoners are provided

22  adequate shelter, food, clothing, sanitation, medical care, and personal safety.  *Johnson v. Lewis*,

23  217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted).  To establish a

24  violation of the Eighth Amendment, the prisoner must "show that the officials acted with

25  deliberate indifference. . . ."  *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th

26  Cir. 2013) (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).

27        The deliberate indifference standard involves both an objective and a subjective prong.

28  First, the alleged deprivation must be, in objective terms, "sufficiently serious."  *Farmer* at 834.

1   Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate

2   health or safety." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).

3         Objectively, extreme deprivations are required to make out a conditions of confinement

4   claim and only those deprivations denying the minimal civilized measures of life's necessities are

5   sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*,

6   503 U.S. 1, 9 (1992) (citations and quotations omitted).  Although the Constitution " 'does not

7   mandate comfortable prisons,' " *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes*, 452

8   U.S. at 349), "inmates are entitled to reasonably adequate sanitation, personal hygiene, and

9   laundry privileges, particularly over a lengthy course of time," *Howard*, 887 F.2d at 137.  Some

10  conditions of confinement may establish an Eighth Amendment violation "in combination" when

11  each would not do so alone, but only when they have a mutually enforcing effect that produces

12  the deprivation of a single, identifiable human need such as food, warmth, or exercise -- for

13  example, a low cell temperature at night combined with a failure to issue blankets. *Wilson*, 501

14  U.S. at 304-05(comparing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) (outdoor

15  exercise required when prisoners otherwise confined in small cells almost 24 hours per day), with

16  *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980) (outdoor exercise not required when prisoners

17  otherwise had access to dayroom 18 hours per day)).

18        Further, temporarily unconstitutional conditions of confinement do not necessarily rise to

19  the level of constitutional violations.  *See Anderson*, 45 F.3d 1310, *ref. Hoptowit*, 682 F.2d at

20  1258 (*abrogated on other grounds by Sandin*, 515 U.S. 472 (in evaluating challenges to

21  conditions of confinement, length of time the prisoner must go without basic human needs may

22  be considered)).  Thus, the Court must evaluate Plaintiff's factual allegations as to the conditions

23  during his confinement in a management cell and in Ad Seg to determine whether they

24  demonstrate a deprivation of a basic human need individually or in combination.

25        **1.  Claim 1**

26        In Claim 1, Plaintiff alleges that Defendants Trimble, Brown, Reeves, Munoz and

27  Singleton violated his rights under the Eighth Amendment when they placed Plaintiff on

28  management status and made Plaintiff endure "freezing" temperatures in his Ad Seg cell for a 24-

hour period.  (Doc. 22, SAC, 5-10.)  Plaintiff faults Defendants Munoz and Singleton because they removed the following property from Plaintiff's cell: the mattress, sheets, a towel, thermal tops and bottoms, a t-shirt, boxers, socks, a blanket and the cardboard used to cover the air vent. (*Id*., p. 6.)  The Court found these allegations stated a cognizable claim for violation of the Eighth Amendment against Defendants Trimble, Brown, Reeves, Munoz, and Singleton.  (Doc. 28, F&R screen, 3:21-4:3, 10:23-12:11.)

### a. Defendants' Motion

Defendants dispute that Plaintiff was placed on management status on March 9, 2006. (Doc. 103-1, pp. 20-21.)  Regardless, Defendants submit excerpts from Plaintiff's deposition testimony and other evidence which they argue shows Plaintiff was not exposed to an objectively serious risk of harm by the temperature in his cell on March 9, 2006.  (*Id.*)  Plaintiff conceded in his deposition testimony that, even if he was placed on management status on March 9, 2006, it ended around noon the next day when Plaintiff agreed to accept a cellmate.  (*Id.*, citing DUFs[2] 9, 15.)  Plaintiff further testified that he was left with a blanket after his other property was removed from the cell.  (*Id.,* citing DUF 12.)  Further, Defendants submit evidence that housing records and Plaintiff's inmate appeal No. 06-1025 show that temperatures in the housing unit from noon on March 9 to noon on March 10, 2006, fluctuated between 66 to 70 degrees.  (*Id.,* citing DUFs 14, 72.)  Defendants argue that no reasonable jury could conclude that leaving an inmate with a blanket in a cell at a temperature no less than 66 degrees Fahrenheit posed a significant risk to Plaintiff's health.  (*Id.*)  Further, Defendants show that Plaintiff testified in his deposition that he had no contact with Defendants Munoz and Singleton, after they removed his property from his cell on March 9, 2006, for either of them to have known that from March 9th to the 10th, Plaintiff felt his cell was cold.  Likewise, they cite to Plaintiff's testimony that he did not tell either of them that his cell was cold. Defendants Munoz and Singleton both submitted declarations that Plaintiff never told them the cell was cold and they had no knowledge that he felt cold in his cell. (*Id.*, citing DUF 16.)  Defendants also submit evidence that even if the temperatures in Plaintiff's

---

[2] Defendants' Undisputed Facts are hereinafter referred to as "DUF."

1  cell created an objectively serious risk, no evidence shows that Defendants Trimble, Brown,

2  Reeves, Munoz, and Single were aware of the temperature in his cell for the  24-hour period in

3  question.  (*Id.*, citing DUF 16-17.)

4  **b.  Plaintiff's Opposition**

5  Plaintiff counters Defendants evidence with his own declaration (Doc. 113, pp. 155-63) in

6  which he asserts that the "strip cell" conditions he complains of on March 9-10, 2006 were part of

7  an underground discipline policy (*id.*, at ¶¶8-10).  Plaintiff states that, during his stay in the G-

8  section of the Ad Seg (where his cell, 189, was located on March 9-10, 2006) all of the cells in

9  that section were "extremely cold" and that while the temperature of some cells may have been in

10  the 60's, his cell "felt as cold as ice."  (*Id.*, at ¶11.)  Plaintiff states that the temperature in his cell

11  on March 9th, "was so cold that it would be impossible for someone to spend any time in the cell

12  without noticing" and that whoever removed the vent cover would have noticed that the air

13  blowing through the vent was "extremely cold" and "caused a wind chill due to the great force of

14  the air coming through the vent" which "made the cell even colder."  (*Id.*, at ¶12.)  Plaintiff states

15  that Defendants Munoz and Singleton were ordered to remove the clothing, property, etc. from

16  his cell as part of the plan to subject him to cold temperatures and that after they removed the vent

17  cover and it felt even colder.  (*Id.*)

18  Plaintiff does not provide basis to conclude he has personal knowledge of these facts.  He

19  does not claim he saw them removing his property or the vent cover, or that he was told they

20  removed the items from his cell.  Plaintiff states that on March 3, 2006, he told Defendant Reeves

21  that his cell was cold, but this statement does not provide a basis to assume that any of the other

22  Defendants had knowledge that Plaintiff's cell was unusually or extremely cold on March 9-10,

23  2006.  Plaintiff fails to provide any evidence to counter Defendants' evidence.  Further, Plaintiff

24  submitted a declaration of an Ad Seg inmate David Alvarez who was housed in the cell next to

25  Plaintiff and states that Plaintiff "appeared to be very sensitive to the cold temperatures."  (Doc.

26  113, p. 103.)  Even if it is assumed that Defendants entered Plaintiff's cell to remove his items

27  and the vent cover, Plaintiff provides no evidence that they actually perceived the temperature of

28  Plaintiff's cell to be as cold as Plaintiff felt it was.

8

### c. **Finding**

The Court finds that Defendants Trimble, Brown, Reeves, Munoz and have met their initial burden of informing the Court of the basis for this motion and identifying admissible evidence to demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually exists.  *See Matsushita,* 475 U.S. at 586.

As stated above, in attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of his contention that a dispute exists. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11; *First Nat'l Bank,* 391 U.S. at 289; *Strong v. France*, 474 F.2d 747, 749 (9th Cir. 1973). Plaintiff fails to establish that a dispute exists, regarding the subjective element of this claim -- i.e. that Defendants Trimble, Brown, Reeves, Munoz, and Singleton were aware that Plaintiff felt cold in his cell from March 9-10, 2006 and were deliberately indifferent to this claim.  Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11; *First Nat'l Bank,* 391 U.S. at 289; *Strong v. France*, 474 F.2d 747, 749 (9th Cir. 1973).  Further, temporarily unconstitutional conditions of confinement, such as the 24 hours or so Plaintiff complains of here, do not rise to the level of a constitutional violation.  *See Anderson v. County of Kern*, 45 F.3d 1310 (9th Cir. 1995) *ref Hoptowit v. Ray*, 682 F.2d 1237, 1258 (9th Cir. 1982) (*abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995) (in evaluating challenges to conditions of confinement, length of time the prisoner must go without basic human needs may be considered).

Thus, as to **Claim 1**, Defendants' motion for summary judgment should be **GRANTED** in favor of Defendants Trimble, Brown, Reeves, Munoz and Singleton.  (Doc. 22, SAC, pp. 5-10.)[3]

### 2. **Claim 9**

Plaintiff alleges Defendants Brown, Reeves, and Collier deprived him of outdoor exercise

---

[3] Since this finding is made on the merits of Plaintiff's Claim 1, the arguments pertaining to whether Plaintiff exhausted the available administrative remedies before filing suit and whether Defendants are entitled to qualified immunity on this claim need not be addressed.

1   in violation of his rights under the Eighth Amendment to the United States Constitution between

2   March 8 and May 2, 2006.  (Doc. 22, pp. 12-13.)  Plaintiff alleges that, as an inmate in Ad Seg, he

3   only had a t-shirt, boxers, and a pair of socks and he was not allowed to take a blanket or a sheet

4   to the yard and he was not given any additional clothing if he chose to attend outside yard time.

5   (*Id.*)  Because of the cold weather, Plaintiff alleges that he was forced to choose between his

6   Eighth Amendment right to exercise and his right to not be subjected to cold temperatures.  (*Id.*)

7   Plaintiff further alleges that he complained to Defendants Brown, Reeves, and Collier about the

8   lack of clothing and the temperatures on several occasions, but they ignored him.  (*Id.*)  Plaintiff

9   alleges that Defendants kept a log, so they knew that he was not getting sufficient outside exercise

10  in this period because of inadequate clothing for the weather.  (*Id.*)  The Court found these

11  allegations stated a cognizable claim for violation of the Eighth Amendment against Defendants

12  Brown, Reeves, and Collier.  (Doc. 28, F&R screen, 4:16-28, 13:6-14:2.)

13                  **a.  Defendants' Motion**

14          Defendants submit evidence that shows that prison officials offered Plaintiff the

15  opportunity to attend outside exercise ten times while he was housed in Ad Seg, but that Plaintiff

16  chose to go to the yard only once.  (Doc. 103-1, 21-22 citing DUFs 18-36.)  Defendants' argue

17  that their evidence shows the outside temperatures on the days they offered Plaintiff outside yard

18  time, but declined to go, were not cold enough to amount to an objectively serious condition

19  without providing additional clothing.  (*Id.*, citing DUFs 24-32.)

20          This evidence shows that inmates in Ad Seg who attended outside yard were allowed to

21  take socks, shorts, a t-shirt, state-issued shoes, and some toilet paper with them.  (DUF 21.)

22  During the winter months, inmates were also allowed to take their thermal top and bottom, watch

23  cap, and clear rain gear. (DUF 21.)  Defendants submitted declarations indicating that they do not

24  recall being informed (by Plaintiff, or anyone else) that Plaintiff had inadequate clothing on all

25  the occasions he refused to attend yard when they were on duty.  (Docs. 103-5, 103-6, 103-13.)

26  They state in their declarations that if Plaintiff had informed them that the clothing available to

27  him was inadequate for the conditions, they would have inquired why his thermals were

28  insufficient, and, as necessary, would have provided him with thermals and rain gear.  The

1    declarations show that yard time was usually cancelled if the outside temperatures neared

2    freezing, it was raining heavily, or there was a risk of lightning strikes regardless of the clothing

3    available to an inmate.  (*Id.*)

4        Defendants' evidence shows the coldest temperature recorded[4] on the nine dates that

5    Plaintiff could have attended yard, but chose not to, was 32 degrees on March 26, 2006.  (*Id.*,

6    citing DUF 26.)  However, their evidence also shows that Plaintiff was offered yard time in the

7    afternoon, when the temperature would have been closer to the 67 degree high on that date than

8    the 32 degree low.  (*Id*.)  The day with the second lowest recorded temperature that Plaintiff

9    declined offered yard was March 19, 2006 when the low was 34 degrees.  (*Id.*, citing DUF 25.)

10   Defendants' evidence likewise shows that this date Plaintiff was again offered afternoon yard,

11   such that the outside temperature would again have been nearer the high of 65 degrees than the 34

12   degree low.  (*Id.*)

13       Further, Defendants evidence shows that, on March 13, 2006, Plaintiff declined yard when

14   offered during second watch, but that he went to yard during third watch.  (Docs. 103-5, 103-6,

15   103-13.)  Of the nine times that Plaintiff was offered, but declined to attend outside exercise yard,

16   Lt. Brown did not work in Plaintiff's housing unit two of those days, Sgt. Collier did not work

17   there five of those days, and Sgt. Reeves did not work there four of those days but his duties only

18   occasionally included assisting with yard release on an "as needed" basis.  (*Id.*)

19       Defendants also submit evidence that, given the moderate daytime temperatures on the

20   yard, and that Plaintiff's cellmate attended yard on the occasions when Plaintiff chose not to do

21   so, they had no information from which to reasonably infer that failing to provide Plaintiff with

22   additional clothing to go outside would subject him to a substantial risk of harm.  (*Id.*, citing

23   DUFs 34-36.)

24                    **b.  <u>Plaintiff's Opposition</u>**

25       Plaintiff responds that Defendants' record-keeping is inaccurate and that he should have

26

27   _____

     [4] The Court takes judicial notice of the recordings of weather from the U.S. Department of Commerce which
     Defendants submitted.  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.2001) (judicial notice may be taken of
28   undisputed matters of public record).

                                  11

1    been offered yard 21 times while he was in Ad Seg; rather than the 10 times that Defendants

2    acknowledge.  (Doc. 113, 21.)  Plaintiff cites to paragraph 51 of the SAC to support this assertion,

3    but, while paragraph 51 in the SAC contains allegations that outdoor exercise was made available

4    to Plaintiff three times a week, it contains nothing to show his personal knowledge of a basis

5    upon which Defendants' record-keeping should be discarded as inaccurate.  (Doc. 22.)

6         Plaintiff also bases his assertion, that Defendants' yard records are not reliable, on his

7    understanding that yard was offered to inmates in Ad Seg three times a week, so he believes he

8    would have been offered it 21 times between March 8 and May 2, 2006 -- not a mere 10 times.

9    (Doc. 113, pp. 21, 161.)  Plaintiff admits that he did not keep any records of his own, but asserts

10   that he declined yard every time it was offered in March, April, and May of 2006.  (*Id.*, p. 158.)

11   However, the disparity between the 10 times Defendants indicate Plaintiff was offered yard and

12   the 21 times Plaintiff alleges he should have been offered yard is irrelevant to the issue of whether

13   Plaintiff was forced to forego yard due to inadequate clothing for the weather.

14        Plaintiff argues that without reliable records as to all occasions he was offered and

15   declined outside yard, Defendants' evidence that the outside temperature did not amount to an

16   objectively serious condition should not be accepted.  (Doc. 113, 21.)  However, as stated

17   previously, the Court takes judicial notice of the U.S. Department of Commerce Record of

18   Climatological Observations, submitted by Defendants, which shows the maximum and minimum

19   temperatures on each date from March 1, 2006 through May 31, 2006.  (*See* Doc. 103-16, 74-77.)

20   These weather records show that while Plaintiff was in Ad Seg, the lowest low temperature was

21   30 degrees on March 13, 2006, but that the high on that date was 61 degrees.  (*Id.*, *see also*, Doc.

22   103-13, Dec. Reeves, ¶19.)  Defendants records showed that Plaintiff refused offered yard on the

23   second watch, but attended yard on the third watch that day.  (*Id.*)  The lowest high temperature

24   while Plaintiff was in Ad Seg was 48 degrees on March 11, 2006, but Plaintiff was not offered

25   yard time on that day.  (*See* Doc. 103-16, 74-77; Docs. 103-5, 103-6, 103-13.)

26        Plaintiff also states that when he told Defendants Brown, Reeves, and Collier that he was

27   not attending yard because his clothing was insufficient for the weather, none of them inquired

28   why his thermals were insufficient, nor ordered that Plaintiff be provided more clothing as stated

in their declarations.  (*Id.*, at p. 162.)  Plaintiff cites to the declaration of his fellow Ad Seg inmate in which inmate Alvarez stated that, upon entry to Ad Seg, it usually took a few weeks for an inmate to receive a pair of thermal underwear, as they were not among the items given to inmates upon entry to Ad Seg.  (Doc. 113, pp. 101-110.)  Further, IM Alvarez states that on April 2, 2006, Defendants Munoz and Singleton went around to every cell and collected all thermals from inmates indicating that inmates were to only have thermals during daylight savings time (Doc. 113, pp. 102) which suggests that Plaintiff went at least a month without thermals during the timeframe in question in this action.

### c. **Finding**

The Court finds that Defendants have met their initial burden of demonstrating the absence of a genuine issue of material fact as to this claim.  The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually exists.  *See Matsushita,* 475 U.S. at 586.

Plaintiff's evidence shows that he complained to each of these three Defendants on separate multiple occasions that he needed more clothing to attend yard. (Doc. 22, SAC, 12:25-26; *see also* Doc. 103-16, p. 95 -- Plaintiff's deposition transcript which Defendants attached as an exhibit to their motion) He asked for a beanie, jacket, gloves, pants, and shoes and explained to them that he couldn't go outside without such items because of the cold temperatures. (*id.,* 12:26-28) Each of these three Defendants ignored his requests. (*id*., 12:28-13:1) Also, each had actual knowledge of how much exercise time Plaintiff missed because they kept a log to which they all had access since Sgt. Reeves and Collier logged which inmates did not go to yard and Lt. Brown maintained those logs. (*id*., 13:7-10)  Plaintiff specifically informed each Defendant that he was "being completely denied yard access when he complained that the clothing provided was insufficient for the outdoor temperatures" (*id*., 13:11-13).

Defendants' countering evidence merely shows that none recalls Plaintiff, or anyone else, telling them that Plaintiff had inadequate clothing on the occasions he refused to attend yard and they were on duty.  They report that had they been informed, they would have asked Plaintiff why his thermals were insufficient and would have ordered (or obtained) thermals and rain gear for

1   Plaintiff if he did not have them.  (Docs. 103-5, p. 5; 103-6, p. 3;103-13, p. 5.)

2          Evidence from both sides shows that once Ad Seg inmates are placed in an outside yard,

3   they do not have the option of coming back in until their 3-4 hours is up, so if Plaintiff went out

4   when offered, he would not have been allowed back in if he became chilled.  (Doc. 22, SAC,

5   12:16-18; Docs. 103-5, 4:17-20;103-6, 2:20-22; 103-13, 4:11-13.)  Defendants appear to imply

6   that they are relieved of liability because Plaintiff was hypersensitive to the cold since he refused

7   to attend yard on days when the high temperature hovered in the high 60's and low 70's (evidence

8   of possible hypersensitivity is also seen in the declaration of IM Alvarez (Doc. 113, pp. 101-110).

9   However, regardless, this ignores the evidence that he specifically and repeatedly told these three

10  Defendants that he needed more clothing to be able to attend outside yard and that they should

11  have known kept he was not getting outdoor exercise.  This raises a triable issue of fact as to

12  whether Sgt. Reeves, Sgt. Collier, and Lt. Brown were deliberately indifferent to the fact that

13  Plaintiff was not getting outdoor exercise because of insufficient clothing.  Thus, Defendants'

14  motion for summary judgment on the merits of **Claim 9** should be **DENIED**.

15          **B.  Eighth Amendment -- Failure to Protect**

16          The unnecessary and wanton infliction of pain violates the cruel and unusual punishments

17  clause of the Eighth Amendment.  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).  When a prison

18  security measure is undertaken in response to an incident, the question of whether it inflicted

19  unnecessary and wanton pain and suffering depends on "whether force was applied in a good

20  faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of

21  causing harm."  *Id.* at 6.

22          The infliction of pain in the course of a prison security measure "does not amount to cruel

23  and unusual punishment simply because it may appear in retrospect that the degree of force

24  authorized or applied was unreasonable, and hence unnecessary."  *Whitley v. Albers*, 475 U.S.

25  312, 319 (1986); *see also Hudson*, 503 U.S. 1.  Prison administrators "should be accorded

26  wide-ranging deference in the adoption and execution of policies and practices that in their

27  judgment are needed to preserve internal order and discipline and to maintain institutional

28  security."  *Whitley* at 321-322 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1970)).

Moreover, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (internal quotations marks and citations omitted). Although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates the Eighth Amendment. *Id.*; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not de minimis injuries)). "Injury and force [] are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38, 130 S.Ct. 1175, 1178-79 (2010). Further, the failure to intervene can support an excessive force claim where the bystander-officers have a realistic opportunity to intervene, but fail to do so. *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995).

## 1. **Claims 12 and 14**[5]

Claims 12-14 relate to events that occurred after two fights Plaintiff had with different proposed cellmates in one day. In Claim 12, Plaintiff alleges that on May 2, 2006, Defendants Redding and Franco used excessive force against him in violation of his Eighth Amendment right under the United States Constitution. (Doc. 22, at 14-24). In this claim, Plaintiff alleges that after he initiated a fight with his cellmate, C/O Redding placed his knee directly on Plaintiff's back and placed "extremely tight" handcuffs on Plaintiff despite the fact that Plaintiff voluntarily placed himself face down on the ground and offered no resistance. (Doc. 22, at 14.) Plaintiff alleged that partway through this incident, Sgt. McBride arrived on the scene, stood nearby,

---

[5] Defendants only move for summary judgment on these claims the merits of Plaintiff's case against Sgt. McBride. (Doc. 103-1, pp. 22-23.) However, all of Plaintiff's allegations are summarized here since Plaintiff's allegations against Sgt. McBride are for observing acts of excessive force and failing to intervene.

observed the use of force on Plaintiff by C/O Redding, and "did not intervene even as plaintiff screamed out in pain." (*Id.,* pp. 14-15.)

Plaintiff further alleges that as he was raised to his feet, C/O Redding and another officer (not sued herein) forced Plaintiff's "tightly handcuffed wrists" over his head; thus, requiring Plaintiff to walk in a "bent over position" for over 200 yards.  (*Id*, p. 22.)  Plaintiff contends that such actions: 1) caused his shoulders to be "twisted" and "nearly pulled out of their sockets;" 2) exacerbated a pre-existing wrist injury; and 3) caused him back pain. (*Id.*, p. 22.)  Plaintiff contends that such actions were not necessary as he was fully compliant.  (*Id.*, p. 22.)

Plaintiff also alleges that during the walk with Redding and the other officer, Sgt. McBride, as C/O Redding's supervisor, accompanied them.  (*Id.*, at 15-16.)  Plaintiff alleged that Sgt. McBride heard Plaintiff tell C/O Redding that he was hurting Plaintiff's shoulders, but McBride did nothing to stop it.  These allegations were found to state cognizable claims for violation of the Eighth Amendment on Claim 12 against C/O Redding and Sgt. McBride.  (Doc. 28, F&R screen, 15:21-17:15.)

In Claim 14 Plaintiff alleged that the same scenario he described after being handcuffed, regarding his arms being lifted over his head and having to walk bent over for a significant distance, occurred after the second fight as well.  (Doc. 22, at 21.)  However, in Claim 14, Plaintiff identifies C/O Franco as the officer who assisted C/O Redding in lifting Plaintiff's arms over his head and forcing him to walk in this painful position after the second fight.  (*Id.*)  Plaintiff alleges that the same scenario also occurred after the second fight with regard to Sgt. McBride:  namely, he observed C/Os Redding and Franco walk Plaintiff with his arms over his head, knew Plaintiff was in pain, knew Plaintiff was willing to be compliant, yet did nothing to intervene.  (*Id.*, at 22.)  The Court found these allegations stated cognizable claims for violation of the Eighth Amendment on Claim 14 against C/O Redding, C/O Franco, and Sgt. McBride.  (Doc. 28, F&R screen, 15:21-17:15.)

### a. <u>Defendants' Motion</u>

Defendants assert that no evidence shows that Sgt. McBride knew of and ignored a substantial risk to Plaintiff's safety on both occasions that he responded to incidents involving

1   Plaintiff.  (Doc. 103-1, pp. 22-23, citing DUFs 37-46.)  Defendants further assert that even if

2   C/Os Redding and Franco used excessive force inside the housing unit as Plaintiff alleged, no

3   evidence shows that Sgt. McBride saw the officers' use of force to require intervention.  (*Id.,*

4   citing DUFs 40, 43, 45.)

5                                    **b.  Plaintiff's Opposition**

6          In opposition, Plaintiff points to his allegations in the verified SAC.  In Claim 12, Plaintiff

7   alleged that Sgt. McBride stood nearby, observed the use of force on Plaintiff by C/O Redding,

8   and "did not intervene even as plaintiff screamed out in pain."  (Doc. 22, pp. 14-15.)  Plaintiff

9   alleges that Sgt. McBride observed C/Os Redding and Franco walk Plaintiff with his arms over

10  his head, knew Plaintiff was in pain, knew Plaintiff was willing to be compliant, and yet failed to

11  intervene.  (*Id.*, at 22.)

12                                   **c.  Finding**

13         The Court finds, as to Plaintiff's Claim 12 and 14, Defendants have met their initial

14  burden of informing the Court of the basis for their motion.  Likewise, they provide admissible

15  evidence to demonstrate the absence of a genuine issue of material fact as to his allegations

16  against Sgt. McBride.  The burden therefore shifts to Plaintiff to establish that a genuine issue as

17  to any material fact actually exists.  *See Matsushita,* 475 U.S. at 586.

18         When dealing with excessive force claims, summary judgment is rarely appropriate.

19  "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed

20  factual contentions, and to draw inferences therefrom, we have held on many occasions that

21  summary judgment or judgment as a matter of law in excessive force cases should be granted

22  sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Liston v. County of*

23  *Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (as amended) ("We have held repeatedly that

24  the reasonableness of force used is ordinarily a question of fact for the jury.").  Drawing all

25  inferences in Plaintiff's favor from the allegations in the verified SAC and comparing them with

26  Sgt. McBride's statements in support of this motion show a disparity between both recollections

27  as to Sgt, McBride's presence during the incidents and their perceptions of the incidents and use

28  of force at issue in Claims 12 and 14.  This creates a dispute of factual contentions that must be

                                              17

1   weighed by the trier of fact.  Thus, Defendants' motion for summary judgment on the merits of

2   Plaintiff's **Claims 12** and 14 against Sgt. McBride should be **DENIED**.

3   **C.  Eighth Amendment -- Serious Medical Need**

4   Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a

5   prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "A medical need

6   is serious if failure to treat it will result in ' "significant injury or the unnecessary and wanton

7   infliction of pain." ' " *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (2014) (quoting *Jett v. Penner*,

8   439 F.3d 1091, 1096 (9th Cir.2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th

9   Cir.1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th

10  Cir.1997) (en banc))

11  To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff

12  must first "show a serious medical need by demonstrating that failure to treat a prisoner's

13  condition could result in further significant injury or the unnecessary and wanton infliction of

14  pain.  Second, the plaintiff must show the defendants' response to the need was deliberately

15  indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*,

16  439 F.3d 1091, 1096 (9th Cir. 2006) (quotation marks omitted)).

17  "Indications that a plaintiff has a serious medical need include the existence of an injury

18  that a reasonable doctor or patient would find important and worthy of comment or treatment; the

19  presence of a medical condition that significantly affects an individual's daily activities; or the

20  existence of chronic or substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir.

21  2014) (citation and internal quotation marks omitted); *accord Wilhelm v. Rotman*, 680 F.3d 1113,

22  1122 (9th Cir. 2012); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).  For purposes of their

23  motion, Defendants do not dispute that the injuries to Plaintiff's ankle and thigh amounted to

24  sufficiently a serious medical need.  (*See* Doc. 103-1, 24:3-6.)

25  Deliberate indifference is "a state of mind more blameworthy than negligence" and

26  "requires 'more than ordinary lack of due care for the prisoner's interests or safety.' " *Farmer v.*

27  *Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley*, 475 U.S. at 319).  "Deliberate indifference

28  is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004).  "Under this

standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.' " *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

In medical cases, this requires showing:  (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.  *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096).  More generally, deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotation marks omitted).  Under *Jett*, "[a] prisoner need not show his harm was substantial." *Id.*; *see also McGuckin*, 974 F.2d at 1060 ("[A] finding that the defendant's activities resulted in 'substantial' harm to the prisoner is not necessary.").

### 1.  Claim 16

Plaintiff alleges that, after being struck with the baton by C/O Redding which fractured his ankle, he was placed in a small, "telephone-booth" sized holding cage.  (Doc. 22 at 25.)  Due to the size and configuration of the holding cage, Plaintiff asserts that he was forced to stand on his injured ankle for over an hour because he could not lower himself to a sitting position.  *Id.* Plaintiff further alleges that once released from the holding cage, he was not cuffed which he claims shows that the officers knew that he did not pose a threat at the time they placed him in it. Plaintiff also alleges that he told the officers that his ankle was broken and that LVN Hall also told them that his ankle was likely fractured, that he needed x-rays, and that the ankle should be elevated.  (*Id.*, at 26.)  Nevertheless, despite Plaintiff also telling Lt. Herrera and Sgt. Mc Bride that he was suffering "extreme pain," they refused to remove him from the holding cage for over an hour.  *Id.*  The Court found these allegations set forth a cognizable Eighth Amendment claim against Lt. Herrera and Sgt. McBride.  (Doc. 28, F&R screen, 6:11-18, 18:22-19:6.)

### a.  Defendants' Motion

1    Defendants argue that Lt. Herrera, Sgt. McBride, LVN Hall, and C/O Lee are entitled to

2    summary judgment because they were unaware that Plaintiff required medical care for the injuries

3    to his right ankle and leg.  (Doc. 103-1, pp. 23-25.)

4    Defendants contend that, LVN Hall did not advise Lt. Herrera and Sgt. McBride that:

5    Plaintiff had a medical emergency or other condition that required urgent care; that Plaintiff

6    should be immediately transported to the TTA or medical clinic for further treatment; or that

7    Plaintiff should receive medical care within a specific time-frame.  (*Id.,* citing DUF 52.)

8    Defendants argue that other than being informed of LVN Hall's "belief" that Plaintiff's ankle was

9    fractured, Lt. Herrera and Sgt. McBride had no other information from which they could

10   reasonably infer that Plaintiff required further, immediate medical care. The state also that

11   Plaintiff never told them that he needed medical care or informed them of the extent of his

12   injuries or pain, and they never saw Plaintiff's injuries. (*Id.*, citing DUF 47-54.)

13                              **(1)  Plaintiff's Opposition**

14   Plaintiff correctly points out that Defendants argument and assertions, as if Claim 16 is

15   against Lt. Herrera and Sgt. McBride for failing to obtain medical treatment for Plaintiff's

16   injuries, or for preventing others from providing it, is off point.  (Doc. 113, pp. 28-29.)   Claim 16

17   was found cognizable under the Eighth Amendment against Lt. McBride and Sgt. Herrera for

18   failing to remove Plaintiff from the "telephone-booth" sized holding cage.  The size of the cell

19   was important because it meant that Plaintiff was forced to stand for over an hour and was unable

20   to elevate his injured ankle (as LVN Hall indicated was needed), despite LVN Hall telling them

21   he believed Plaintiff's ankle was broken and Plaintiff telling them that he was in "extreme pain."

22   (*See* Doc. 28, F&R screen, 6:11-18, 18:22-19:6.)  This claim is not about Lt. Herrera and Sgt.

23   McBride failing to obtain medical treatment for Plaintiff.

24                                    **(2)  Finding**

25   The Court finds that Defendants have not demonstrated the absence of a genuine issue of

26   material fact and are not entitled to summary judgment on the merits of Claim 16 against Lt.

27   Herrera and Sgt. McBride for causing Plaintiff to be confined to a "standing only" holding cell

28   despite knowing that his ankle may be fractured and that it should be elevated.  Thus, Defendants'

1   motion for summary judgment on **Claim 16** against Lt. Herrera and Sgt. McBride should be

2   **DENIED**.

3           1.  <u>**Claim 17**</u>

4           In Claim 17 Plaintiff alleges that he was not given medical attention for two days after

5   C/O Redding fractured his ankle.  (Doc. 22, at 29-30.)  Plaintiff alleges that LVN Hall examined

6   Plaintiff from a few feet away within minutes of the incident (while he was in the holding cage),

7   but did not provide any treatment.  (*Id*., at 29.)  Also, Plaintiff alleges that, in the presence of Lt.

8   Herrera, LVN Hall stated that his ankle may be broken which required x-rays and medical

9   treatment; instead, Plaintiff was placed in a cell and left there for two days.  *Id*.  During this time,

10  Plaintiff was provided neither bandages to cover a laceration on the back of his leg, nor a cane or

11  crutches, nor supplies to allow him to elevate his ankle.  *Id*.  Plaintiff alleges that, because he was

12  forced to walk on the ankle, the swelling became "excessive" and grew to the size of a "football."

13  (*Id*. at 31.)

14          During this time, Plaintiff alleges C/O Lee came to his cell and Plaintiff asked him for

15  medical attention and showed him his ankle which had grown to be the size of a "football."  (Doc.

16  22 at 31.)  Nevertheless, C/O Lee failed to summon medical staff.  (*Id*.)  The next day, C/O Tucker

17  came to Plaintiff's cell and, again, Plaintiff showed C/O Tucker his hugely swollen ankle and

18  requested medical attention.  (*Id*.)  C/O Tucker disparaged Plaintiff and refused to summon

19  medical care.  (*Id*.)  Plaintiff alleges that the delay in receiving medical treatment caused

20  complications with the healing of his ankle and resulted in chronic heel pain.  (*Id*. at 35-36.)  The

21  Court found these allegations stated cognizable claims against C/Os Lee and Tucker for deliberate

22  indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment.  (Doc. 28,

23  pp. 20-21.)

24          Plaintiff alleges that LVN Hall believed that Plaintiff's ankle was broken, but failed to

25  treat him or to ensure he received immediate treatment for his broken ankle.  (Doc. 22 at 32.)  He

26  claims that this resulted in his suffering complications such as long-term heel pain because of the

27  resultant excessive swelling.  (*Id*. at 36.)  In addition, he claims that LVN Hall failed to properly

28  complete forms, to provide him a cane or crutches, and to bandage the wound on his thigh.  (*Id*.)

1   Plaintiff alleges that LVN Hall had the ability to provide a cane or crutches, but did not do so

2   despite knowing that Plaintiff needed to keep weight off the ankle and would not be able to do so

3   in their absence.   (*Id.*, p. 30.)  It is these allegations that Plaintiff is proceeding under Claim 17

4   against LVN Hall for his failure to provide a cane or crutches in violation of the Eighth

5   Amendment.  (Doc. 28, pp. 19-20.)

6                           **a.  Defendants' Motion**

7        Defendants argue that LVN Hall, Sgt. McBride, and C/O Lee are entitled to summary

8   judgment on the merits of Claim 17.  (Doc. 103-1, pp. 23-25.)

9                           **(1)  LVN Hall**

10       Defendants assert that LVN Hall is entitled to summary judgment on Claim 17 because no

11  evidence shows that he ignored Plaintiff's serious medical need on May 2, 2006 and the

12  following days while Plaintiff was housed in Building 1.  (Doc. 103-1, pp. 24-25.)  Defendants'

13  evidence shows LVN Hall conducted a medical evaluation of Plaintiff on May 2, 2006,

14  documented his injuries, sought the advice of the TTA nurse, provided Plaintiff with ice and pain

15  medication, brought a wheelchair,[6] offered to clean and bandage the thigh wound (which Plaintiff

16  refused), and recommended that Plaintiff get x-rays -- which the TTA nurse informed LVN Hall

17  would be ordered the following morning.  (*Id.*, citing DUF 55-57.)  Defendants assert that nothing

18  in LVN Hall's conduct evinces that he ignored or delayed in treating Plaintiff's injuries.  (*Id.*)

19  Further, they assert that no evidence shows that LVN Hall was aware of Plaintiff's requests for

20  medical assistance while he was housed in Building 1 (*id.*) and that, after Plaintiff left the

21  Program Office, LVN Hall had no further contact with him and did not receive any information to

22  suggest that Plaintiff requested further medical care for his injuries.  (*Id.*, citing DUFs 58-59.)

23                          **(a)  Plaintiff's Opposition**

24       Plaintiff opposes this portion of the motion by correctly indicating that, upon screening,

25  the Court restricted his allegations against LVN Hall in Claim 17 to "his failure to provide a cane

26  _____

27  [6] In their motion, Defendants assert that LVN Hall "brought him a wheelchair" -- implying that LVN Hall brought a
    wheelchair for Plaintiff's use.  (Doc. 103-1, pp. 24-25, citing DUFs 55-57.)  However, as discussed in greater detail
    below, the evidence submitted does not show that the wheelchair LVN Hall brought was ever actually given to

28  Plaintiff for his use.

                                    22

1    or crutches in violation of the Eighth Amendment." (*See* Doc. 28, F&R screen, 20:18-19.)

2         Plaintiff however, asserts that the Findings and Recommendation screening the SAC on

3    his allegations in Claim 17 against LVN Hall were vague and appeared to perhaps have been

4    intended to allow him to also proceed against LVN Hall for failing to take x-rays and refer

5    Plaintiff to other medical staff whereupon Plaintiff now requests a ruling in his favor to be

6    allowed to proceed against LVN Hall on this aspect of his allegations as well.  (Doc. 113, p. 36.)

7    In their reply, Defendants address neither Plaintiff's opposition to their motion on the merits of

8    Claim 17, nor Plaintiff's request to expand Claim 17.

9         The Findings and Recommendations that screened the SAC issued on November 27, 2012

10   and contained directions that objections to the F&R were to be filed within 14 days of its service

11   and that the failure to raise an objection within that time frame may waive the right to appeal

12   thereon.  Plaintiff filed timely objections wherein he raised a number of issues, none of which

13   addressed any vagueness as to the allegations upon which Claim 17 was found cognizable against

14   LVN Hall.  (*See* Doc. 29.)  An order subsequently issued adopting the F&R and directing service,

15   which addressed the issues raised in Plaintiff's objections.  (Doc. 30.)  Thus, Plaintiff is

16   proceeding against LVN Hall in Claim 17 *only* for the failure to provide a cane or crutches,

17   despite believing Plaintiff's ankle was fractured, in violation of the Eighth Amendment.

18                                    **(b)  Finding**

19        Defendants fail to present evidence directed toward whether LVN Hall failed to provide

20   any assistive mobility devices to Plaintiff since LVN Hall believed he had a broken ankle.  (*See*

21   Doc. 28, F&R screen, 20:18-19.)  As noted above, while Defendants suggest in their argument

22   that LVN Hall brought a wheelchair for Plaintiff, this is not borne out by their evidence.

23   Specifically, in his declaration, LVN Hall states that after he chatted with the TTA nurse, he

24   gathered bandages, Motrin, ice, and a wheelchair, and returned to the Program Office.  (Doc. 103-

25   7, Hall Decl., 3:4-5.)  LVN Hall then states that he gave Plaintiff the ice and Motrin, but that

26   Plaintiff declined receipt of the bandages and LVN Hall's offer to dress the wound on the back of

27   his leg.  (*Id.*, at 3:5-9.)  LVN Hall does not declare that he gave the wheelchair to Plaintiff.  (*Id.*)

28   Further, both parties acknowledge that correctional staff used the wheelchair LVN Hall brought

1    merely to transport Plaintiff from the holding cage to a cell.  (Doc. 113, 37:8-13, citing Doc. 22,

2    SAC, ¶ 103; SAC Exh. I; Doc. 113, at 160:2-21; Doc. 103-7, Hall Decl., ¶ 9; Doc. 103-2, DUF

3    55.)

4            Defendants fail to show, despite believing Plaintiff's ankle was broken, that LVN Hall

5    took any measures to provide Plaintiff with assistive mobility devices such as a cane, or crutches

6    for his use until his ankle was further evaluated and treated.  Thus, they have not met their burden

7    and their motion for summary judgment on the merits of **Claim 17** against LVN Hall should be

8    **DENIED**.

9                                        **(2)  C/O Lee**

10           Defendants assert that Plaintiff conceded that he has no knowledge whether C/O Lee

11   summoned medical staff for his complaints of ankle pain.  (Doc. 103-1, p. 25, citing DUF 65.)

12   Although C/O Lee does not recall if Plaintiff requested medical care while housed in Building 1,

13   C/O Lee asserts his customary practice was to summon medical care, and he would have followed

14   that practice on May 3-4, 2006.  (*Id.*, citing DUF 66 and Fed. R. Evid. 406.)  Implicit in the

15   argument however, is that, since Plaintiff did not receive medical care for his left ankle until May

16   5, 2006, he must not have asked C/O Lee to summon medical care on May 3-4, 2006.

17                                **(a)  Plaintiff's Opposition**

18           Plaintiff asserts in his opposition that C/O Lee was part of a conspiracy with the other

19   correctional Defendants to keep Plaintiff confined to his cell.  (Doc. 113, pp. 33-36.)  However,

20   Plaintiff did not attempt to state a conspiracy claim in the SAC (Doc. 22), no such claims were

21   found cognizable (Doc. 28, 30), and he may not now expand the scope of this litigation via

22   deposition testimony or his opposition to Defendants' motion for summary judgment, *see Gilmore*

23   *v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

24           Plaintiff also argues that, if C/O Lee summoned medical help for Plaintiff, he did not

25   receive it and C/O Lee should have followed up to see if Plaintiff received medical treatment and

26   should not have gone home either night without making sure Plaintiff had been seen by medical

27   staff.  (Doc. 113, pp. 33-36.)  Plaintiff also argues that if C/O Lee's summons for medical help for

28   Plaintiff were not responded to, C/O Lee should next have checked with correctional staff about

moving Plaintiff to the medical unit. Plaintiff opines that if C/O Lee did this, other C/Os would

have told him to leave Plaintiff in his cell such that C/O Lee should have then gone to the Warden

to get the medical attention Plaintiff needed. (*Id.*)  However, this entire argument is based only

on Plaintiff's supposition.  Other than the fact that Plaintiff did not receive medical care for his

ankle until May 5, 2006, Plaintiff cites no evidence to show that C/O Lee did not in fact follow-

up with the medical office, or that he failed to summon medical help in the first place. (*Id.*)

Plaintiff also argues that if C/O Lee is allowed to proceed on what he says is his

"customary practice" then Plaintiff points to other lawsuits against C/O Lee where he allegedly

ignored requests of inmates for protection from their cellmates, once even after the inmate had

already been attacked. (*Id.*)  Whether C/O Lee is alleged to have disregarded non-medical

complaints of other inmates is irrelevant to Plaintiff's claims that Lee failed to summon medical

care.[7]

### (b) <u>Finding</u>

Defendants failed to submit sufficient evidence to prove that C/O Lee had a "customary

practice" of always and invariably summoning medical care when an inmate requested it.

Defendants fail to submit any evidence to show even one specific instance where C/O Lee

summoned medical care for an inmate who requested it prior to May 3-4, 2006.  Habit or routine

is generally proved by testimony concerning specific incidents of conduct.  *Perrin v. Anderson*,

784 F.2d 1040 (10th Cir. 1986); *see also Mobil Exploration & Producing U.S., Inc., v. Cajun

Const. Servs., Inc.,* 45 F.3d 96, 99 (5th Cir. 1995) (sufficient number of specific instances of

conduct must be shown to obtain inference of routine business practice).  In his declaration, C/O

Lee does not even state how many times an inmate requested medical care and then attest that in

every instance he sought medical care for the inmate.  Likewise, he does not state that he *always*

summoned medical care when inmates requests it.  This type of evidence is required to

demonstrate C/O Lee would have acted in accordance with his habit, under Federal Rule of

Evidence 406.  Thus, Defendants fail to prove C/O Lee's habit upon which to infer that he had no

---

[7] Lee does not claim to have a customary practice related to *all* inmate complaints.

1    knowledge, via specific request by Plaintiff or otherwise, that Plaintiff's ankle needed medical

2    care.

3            Defendants also move for summary judgment on this claim based on Plaintiff's admission

4    that he did not know whether C/O Lee summoned medical staff for his complaints of ankle pain

5    on May 3-4, 2006.  (Doc. 103-1, p. 25, citing DUF 65.)  However, Defendants also submit

6    evidence that shows that at 16:50 on May 4, 2006, Plaintiff submitted a health care services

7    request form for medical care to get his medication for his reflux, ointment for his lips, and

8    Metamucil which ended by stating that his "foot needs x-ray, I can't walk."  (Doc. 103-16, p. 67.)

9    Plaintiff was then seen by medical staff for his ankle on May 5, 2006 at 01:00.  (Doc. 103-16, p.

10   68.)  The Registered Nurse "Encounter Form" noted under "Subjective:  History of current

11   complaint" . . . "I/M ankle was injured 5/2/06 in mutual combat; refused medical care until

12   requesting ER attention tonight."  (*Id.*)  The form further notes Plaintiff's skin as "pink" states he

13   is "unable to bear weight on L ankle," MD referral was requested on a "STAT" basis and referral

14   to higher level of care indicated "CKM ER."  (*Id.*)

15           Further, Defendants also submitted excerpts of Plaintiff's deposition testimony wherein he

16   testified that he asked C/O Lee to summon medical care for his ankle, and showed C/O Lee his

17   swollen, colorful ankle, in the morning and around noon on both May 3 and May 4, 2006.

18   (Docs., 103-2, DUFs 65, 66; Doc. 103-16, pp. 115-117.)  The only evidence Defendants submit to

19   contradict this is that pertaining to C/O Lee's "customary practice" to always call medical staff

20   when an inmate requests medical care which, as previously discussed, is insufficient.  Thus,

21   giving Plaintiff all inferences he is entitled to as a *pro se* non-moving party, Defendants' motion

22   for summary judgment on **Claim 17** against C/O Lee should be **DENIED**.

### (3) <u>Defendant McBride</u>

24           Defendants appear to attempt to address Plaintiff's allegations in Claim 16 against Sgt.

25   McBride in the discussion of their argument for summary judgment on the merits of Claim 17.

26   (Doc. 103-1, 25:6-14.)  Defendants argue that Plaintiff's position that that Sgt. McBride denied

27   him medical care by issuing an order that prevented staff from removing him from his cell is

28   nonsensical.  Defendants note that Plaintiff concedes that he had no contact with Sgt. McBride in

Building 1 on May 3-4, 2006.  Defendants contend that Sgt. McBride issued no such order.

Rather, he placed Plaintiff on modified program status for less than a twenty-four hour period

because of Plaintiff's two violent altercations on May 2, 2006 and because this would prevent

him from assaulting another inmate. (*Id.*, citing DUF 61.)  Defendants submit evidence to show

that the order did not prevent custody or medical staff from removing Plaintiff from his cell for

purposes of obtaining medical treatment.  (*Id.*, citing DUF 62.)  Defendants argue that Sgt.

McBride's placement of Plaintiff on modified program status was a reasonable and necessary

response to Plaintiff's violent outbursts and that no evidence exists to show that Plaintiff was not

given medical care in Building 1 because of this order.   (*Id.*, citing DUFs 55-69.)

### (a)  Plaintiff's Opposition

Plaintiff asserts, once again correctly, that Defendants do not address the substance of

Claim 16 against Sgt. McBride (for holding him for over an hour in the holding cage which was

too small to sit in, with an ankle that they were aware was injured, may be broken, and was

causing Plaintiff extreme pain) and reiterates that Sgt. McBride is not named in Claim 17.  (Doc.

113, pp. 31-39.)

### (b)  Finding

Defendants do not meet their burden of proof on the merits of **Claim 16** against Sgt.

McBride.  Their motion for summary judgment hereon should be **DENIED**.

### D.  Exhaustion of Administrative Remedies

Defendants move for summary judgment on all of the claims[8] that Plaintiff is proceeding

on in this action for Plaintiff's failure to exhaust available administrative remedies prior to filing

suit.  (Doc. 103-1, pp. 15-19.)

Pursuant to the Prison Litigation Reform Act of 1996, "[n]o action shall be brought with

respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted."  42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211

---

[8] Plaintiff's exhaustion efforts as to Claim 1 need not be addressed since summary judgment was previously found proper on the merits.

1  (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  "The PLRA attempts to

2  eliminate unwarranted federal-court interference with the administration of prisons, and thus

3  seeks to afford corrections officials time and opportunity to address complaints internally before

4  allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (alterations,

5  footnote, and quotation marks omitted).  Requiring exhaustion provides prison officials a "fair

6  opportunity to correct their own errors" and creates an administrative record for grievances that

7  eventually become the subject of federal court complaints.  *Id.* at 94, 126; *see also Porter v.

8  Nussle*, 534 U.S. 516, 524-25 (2002).

9        Exhaustion is required for all suits relating to prison life, *Porter*, 435 U.S. at 532, and

10  regardless of the relief sought by the prisoner and/or offered by the process, *Booth v. Churner*,

11  532 U.S. 731, 741 (2001).

12       Prisoners must adhere to the deadlines and other "critical procedural rules" of the prison's

13  grievance process, *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90, such that an untimely or

14  otherwise procedurally defective grievance is insufficient, *Woodford,* 548 U.S. at 83-84.  The

15  California prison grievance system has three levels of review; an inmate exhausts administrative

16  remedies by obtaining a decision at each level.  Cal.Code Regs. tit. 15, § 3084.1(b) (2011)[9];

17  *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir.2010).  The California prison grievance system has

18  been in place for many years, but various changes were implemented in 2011.   While the updated

19  requirements apply to all incidents after their implementation, where differences in the pre- and

20  post- 2011 systems exist, the sufficiency of Plaintiff's use of the grievance system must be

21  evaluated under the pre-2011 requirements.

22       "A grievance need not include legal terminology or legal theories unless they are in some

23  way needed to provide notice of the harm being grieved." *Griffin v. Arpaio*, 557 F.3d 1117, 1120

24  (9th Cir. 2009); *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010).  "A grievance also need not

25  contact every fact necessary to prove each element of an eventual legal claim." *Griffin*, 557 F.3d

26  _____

[9] This general three level process was in place in 2006, when the incidents complained of in this action occurred.  In
27  2011, the California prison grievance system was updated.  While the updated requirements apply to all incidents
after their implementation, Plaintiff's use of the grievance process must be evaluated under the requirements in place
28  in 2006.

at 1120.  The primary purpose of a grievance is to alert prison officials to a problem and facilitate its resolution.  *Id.*  Where a prison's grievance procedures are silent or incomplete as to the level of factual specificity required, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'"  *Id.* (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002); *Morton*, 599 F.3d at 946.  Thus, a grievance must "'provide enough information . . . to allow prison officials to take appropriate responsive meAd Segres.'"  *Griffin*, 557 F.3d at 1121 (quoting *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004)).

Failure to exhaust may be excused where the administrative remedies are rendered "unavailable," but the plaintiff bears the burden of demonstrating that the grievance process was unavailable to him through no fault of his own.  *Sapp v. Kimbrell*, 623 F.3d 813, 822-23 (9th Cir. 2010); *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010); *Brown*, 422 F.3d at 939-40.

### 1.  Claim 9

#### a.  Defendants' Motion

Defendants argue that none of Plaintiff's inmate appeals ("IA") that were accepted for review grieved about the denial of outdoor exercise while he was in Ad Seg from February 28 through May 2, 2006.  (Doc. 103-1, pp. 17-18.)

Defendants argue that Plaintiff's April 3, 2006 IA was screened-out since Plaintiff submitted another non-emergency IA less than seven days before he submitted it.  (*Id.*, citing Morgan Decl. Ex. 28, p. 6.)  Defendants argue that, under § 3084.4(a), an inmate was allowed to submit only one non-emergency IA within a seven-day period.  (*Id.*, citing DUF 100).  Defendants submit evidence that whether the earlier appeal was submitted for formal or informal review is of no consequence to the one-a-week limit under § 3084.4(a).  (*Id.*, citing DUF 101.)  Similarly, Defendants submit evidence to show there is no support for Plaintiff's contention that his earlier non-emergency IA required the prison to hold his April 3, 2006 IA in abeyance.  (*Id.*, citing Morgan Decl. Ex. 28 at 6.)  Based on the issuance of the screen-out letter dated April 5, 2006, Defendants argue the appropriate authority rejected Plaintiff's April 3, 2006 IA as permitted under § 3084.4(a)(2).  (*Id.,* citing DUF 102.)  Defendants assert that, because Plaintiff failed to timely or properly file an IA concerning his access to yard due to insufficient clothing,

1    he is precluded from pursuing Claim 9.

2                              **b.  Plaintiff's Opposition**[10]

3            In his 2014 opposition (Doc. 55), Plaintiff argues that he appropriately exhausted

4    administrative remedies on his claim concerning his lack of outdoor exercise due to inadequate

5    clothing for the weather in his April 3, 2006 IA, but that it was improperly screened out as

6    exceeding the one-appeal-a-week rule.  (Doc. 55, p. 6.)  Plaintiff argues that the one-appeal-a-

7    week rule applies only to IAs submitted at the formal level and not to any submissions at the

8    informal level.  (*Id.*)  While Plaintiff admits that he submitted an IA on March 30, 2006 regarding

9    food service, he argues that he submitted it to the Correctional Food Manager for the informal

10   level review (which was the only level Plaintiff argues he intended to pursue) and that, instead of

11   returning it to him, the CFM errantly submitted it to the Appeals' Coordinator's ("AC") office.

12   (Docs. 55, 113.)  Plaintiff argues that the AC then errantly screened out his April 3rd IA because

13   of the March 30th IA that the Food Manager mistakenly submitted it to the AC, which should

14   allow Plaintiff to proceed in this action because the administrative remedy was effectively

15   rendered unavailable to him, though no fault of his own.  (*Id.*)  However, Plaintiff does not submit

16   any authority or evidence upon which he bases his assertion that the one-appeal-a-week rule does

17   not apply to appeals submitted at the informal level or that he gets to choose to whom he submits

18   his IAs and the Court finds none.

19           Plaintiff further argues in his current and 2014 oppositions, that an IA that he submitted

20   on September 29, 2006 covered the allegations of Claim 9, but was improperly screened out,

21   which rendered the administrative remedy unavailable to him.  (Doc. 55, p. 9; Doc. 113, pp. 7-11,

22   54-61, 65-72.)  Plaintiff asserts that Defendants "switched" the screen-out letter to his September

23   29th IA and his October 6, 2006 IAs in their motion.  (*Id.*)  Plaintiff asserts that his October 6th

24   IA was screened out for having too many issues and that his September 29th IA was screened out

25   _____

26   [10] Plaintiff variously refers the Court to the 128 page opposition he filed in 2014 to Defendants' motion to dismiss on exhaustion grounds (Doc. 55).  The Court has considered the portions of Plaintiff's 2014 opposition to which Plaintiff specifically referred, but has declined to ferret out support for Plaintiff's opposition where he has failed to

27   provide specific reference.  While the Court *may* consider other materials in the record not cited to by the parties, it is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031

28   (9th Cir. 2001).

1    as being untimely.  (*Id.*)  Thus, Plaintiff asserts that his September 29th IA, which complained of

2    a number of conditions in Ad Seg including inadequate clothing for yard time) was improperly

3    screened out as untimely which rendered the administrative remedy unavailable to him.

4    However, as pointed out by Defendants, Plaintiff's October 6th IA raised only one issue --

5    the alleged excessive force of Defendants (Doc. 103-4, pp. 118-123, Ex. 29), while his September

6    29th IA raised numerous issues (*id.*, pp. 124-129, Ex. 30).   Thus, Plaintiff's argument that the

7    November 7, 2006 screen-out letter rejecting his October 6th IA as "untimely" was intended to be

8    in response to the September 29th IA, and that the November 22, 2006 screen-out letter rejecting

9    the appeal as raising "too many issues" was intended to be in response to the October 6th IA on

10    excessive-force is illogical.  Defendants correctly point out that Plaintiff did not resubmit his

11    September 29th IA, nor does Plaintiff point to any efforts on his part to correct the supposed

12    "switch" of screen-out letters and the Court finds none.

13    In his current opposition, Plaintiff also argues that the AC improperly screened out the

14    September 29th IA because he alleged staff misconduct and under AB 05-03, the AC was

15    required to process staff issues separately.  (Doc. 113, p. 9.)  Defendants reply that the AC

16    ***returned*** the September 29th IA to Plaintiff with the opportunity to correct the errors and separate

17    out the issues.  (Doc. 118, citing Morgan Decl. Ex. 30 at 5.)  Defendants correctly point out that

18    Plaintiff failed to explain why he did not subsequently submit separate IAs for staff misconduct

19    and another for the conditions with the administrative segregation or object that the screen-out

20    letter did not correlate appropriately to that IA.  (*Id.*)

21    Also without merit is Plaintiff's contention that screening out the September 29th IA on

22    the grounds that it contained "too many issues" was improper because the regulations did not

23    provide for such a ground.  (Docs. 55, 113.)  As Defendants correctly point out, the 2006 version

24    of § 3084.4(c) of Title 15 provided that with exceptions not applicable here, appeals where "the

25    grievance or problem cannot be understood or is obscured by pointless verbiage or voluminous

26    unrelated documentation shall be rejected."  The numerous issues raised in Plaintiff's September

27    29th IA, coupled with the lack of specificity as to asserted misconduct of the Defendants did not

28    allow the AC to determine whether the IA could proceed as a staff complaint.  (Doc. 118, p. 5.)

1   Therefore, the AC properly returned it for Plaintiff to separate the issues.  (*Id.,* citing Morgan

2   Decl. ¶ 9.)

3                                   **c.  Finding**

4          The Court finds, as to Plaintiff's Claim 9, Defendants have met their initial burden of

5   informing the Court of the basis for their motion and identifying admissible evidence to

6   demonstrate that Plaintiff failed to exhaust available administrative remedies prior to filing this

7   action.  The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material

8   fact actually exists.  *See Matsushita,* 475 U.S. at 586.

9          However, Plaintiff's evidence does not establish either that he filed an IA on the issues

10  asserted in Claim 9 and pursued it as required, or that his failure to exhaust was excused.

11  *Sapp v. Kimbrell*, 623 F.3d at 822-23; *Nunez*, 591 F.3d at 1224; *Brown*, 422 F.3d at 939-40.  Thus,

12  Defendants' motion for summary judgment for Plaintiff's failure to exhaust available

13  administrative remedies prior to filing suit on **Claim 9** should be **GRANTED**.

14                            **2.  Claims 12-14[11]**

15         In these claims, Plaintiff alleges that on May 2, 2006, he was in two different fights with

16  two different cell-mantes after prison officials forced him to accept a cellmate.  (Doc. 22, SAC,

17  Claim 12 pp. 13-17; Claim 13 pp. 17-20; Claim 14 pp. 20-24.)  He asserts that C/O Redding and

18  C/O Franco used excessive force when they intervened in the fight and that Sgt. McBride's failed

19  to protect him from the officers' excessive use of force.

20         In Claim 13, Plaintiff alleges that after a second fight with a different inmate on May 2,

21  2006, C/O Redding broke Plaintiff's ankle and lacerated his thigh when he struck Plaintiff with a

22  metal baton.  (Doc. 22, at 19.)  Plaintiff claims that the fight had ended, he had walked a few feet

23  away from his cellmate, and was in the process on getting down on the ground when Redding

24  struck him.  (*Id*., at 18.)  Plaintiff contends that C/O Redding had not yet ordered him to get on

25  the ground, nor did he give Plaintiff an opportunity to do so before C/O Redding struck him.  (*Id*.)

26  ///

27

28  ----
    [11] See section V.B.1. hereinabove for the factual allegations in Claims 12 and 14.

### a. **Defendants' Motion**

Defendants assert that Plaintiff submitted an IA dated October 6, 2006, concerning the incidents, which occurred on May 2, 2006.  (Doc. 103-1, pp. 18-19, citing DUF 103.)  Defendants assert that Plaintiff's filing of the October 6th IA, some five months after the incident, was untimely in violation of § 3084.6(c) of the Title 15 (requiring inmates to submit an appeal within 15 working days of the adverse action).  (*Id.*)

Defendants anticipated that Plaintiff would argue, as he did in the October 6th IA, that it was timely since he filed it under § 3391 as a "Citizen's Complaint."  (*Id.*)  Defendants correctly point out that any such argument fails since Section 3391(b) provides the process for *non-inmates* to complain about officer misconduct.  (*Id.*, citing Cal. Code Reg., tit. 15, § 3391(b) (stating that a complaint by a non-inmate is a "citizen's complaint," and refers to a "citizen" as a "non-inmate"); *see also*, *id*. § 3391(c) (referring to "persons other than an inmate")).)

Defendants also anticipate Plaintiff's argument that IA No. 06-1738, dated May 29, 2006, which complained about C/O Tucker's alleged misconduct was sufficient to place prison officials on notice about his allegations of misconduct against C/O Redding, C/O Franco, and Sgt. McBride in Claims 12-14.  (Doc. 103-1, pp. 18-19 citing DUF 74.)  However, Defendants point out that in IA No. 06-1738, Plaintiff expressly stated that that it was not intended to grieve about the conduct of C/Os Redding and Franco.  (*Id.*, citing Morgan Decl. Ex. 5 at 4.)  Defendants assert that prison officials were entitled to rely on Plaintiff's representation that he was not complaining about C/Os Redding and Franco in that IA because Plaintiff asserted this conduct would be addressed in another appeal.  (*Id.*)

### b. **Plaintiff's Opposition**

In both his 2014 and current opposition, as Defendants anticipated, Plaintiff argues that his October 6th IA was improperly screened out because it was a "Citizens Complaint" and was timely under the twelve-month filing deadline of § 3391 of Title 15.  (Docs. 55, pp. 14-18; Doc. 113, 11-13.)  However, Plaintiff fails to cite any legal authority finding that an inmate may file a "Citizens Complaint" under § 3391 and may exhaust administrative remedies by merely stating that he intends it to be a "Citizens Complaint" under § 3391 such that he would have one year,

1    instead of 15 days, to timely file it -- particularly where, as here, an inmate submits what he is

2    calling a "Citizens Complaint" on a CDC 602 form.  (*See* Doc. 113, Exh C, pp. 65-74.)

3    Moreover, the Court rejects this argument as inconsistent with the exhaustion scheme developed

4    by the CDCR and would be an improper attempt to circumvent these requirements.

5           Plaintiff also argues that he has filed "Citizens Complaints" in the past that CDCR has

6    processed after the 15 day filing deadline, so his October 6th IA should be deemed timely for

7    exhaustion purposes here based on Plaintiff's past experiences.  (Doc. 113, pp. 11-12.)  However,

8    here again, Plaintiff fails to cite legal authority to support his position and the Court finds none.

9    Plaintiff also argues that the wrong screening letter was attached to this IA, but this argument is

10   disregarded for the reasons stated above.  (*See* V.D.1.b. *supra* .)  "Proper exhaustion demands

11   compliance with an agency's deadlines and other critical procedural rules because no adjudicative

12   system can function effectively without imposing some orderly structure on the course of its

13   proceedings." *Woodford v. Ngo* 548 U.S. 81, 91 (2006).  Plaintiff's October 6th IA was properly

14   screened out as untimely under § 3084.6(c) of the Title 15 since submitted more than 15 days

15   after the offending acts occurred.

16          Plaintiff next argues that IA No. 06-1738, dated May 29, 2006, which was processed to

17   the Third Level Review, put prison officials on notice about his allegations against C/O Franco,

18   C/O Redding, and Sgt. McBride.  He asserts that he specifically named C/Os Redding and Franco

19   and alleged they engaged in excessive force which resulted in his fractured ankle.  Finally, he

20   argues that in 2006, he wasn't required to name every defendant in an IA back in 2006.  (*Id.*)

21   Plaintiff also argues that the Third Level decision indicated that it exhausted the administrative

22   remedy available and it did not state that the decision did not apply to all facts stated in the IA.

23   (*Id.*)

24          It is true, as Plaintiff asserts, that he was not required, at that time, to name Sgt. McBride

25   in the IA to have put prison personnel on notice of his allegations.  *See Reyes v. Smith,* --- F.3d ---

26   , 2016 WL 142601, (9th Cir. Jan. 12, 2016) (finding an inmate need not name every Defendant in

27   an IA even where procedural rule required inmates to "list all staff member(s) involved" in a

28   grievance and "describe their involvement in the issue" (Cal. Code Regs. Tit. 15 § 3084.2(a))

34

1   where prison officials decided the potentially flawed grievance on the merits).  However, the

2   merits of Plaintiff's allegations in Claims 12-14 against C/O Redding, C/O Franco, and Sgt.

3   McBride *were not* addressed by prison personnel in IA No. 06-1738 due to Plaintiff's explicit

4   instruction.

5          Despite this, Plaintiff argues that his allegations in IA No. 06-1738 sufficed to exhaust his

6   claims against C/O Redding, C/O Franco, and Sgt. McBride and that prison personnel should

7   have advised him that they intended to only address Plaintiff's claims against C/O Tucker IA No.

8   06-1738 and notified him that other issues needed to be appealed separately.  (Doc. 113, pp. 12-

9   13.)  However, in the copy of  IA No. 06-1738 that Defendants submitted, immediately after that

10  the facts Plaintiff stated, which included C/Os Redding and Franco by name, Plaintiff wrote that

11  "[t]he two above examples **are not at issue** here, they are just used as supporting evidence.  **They**

12  **will be addressed in separate complaints** . . . ."  (Doc. 103-4, pp. 25, emphasis added.)  The

13  Court notes that Plaintiff also submitted a copy of IA 06-1738.  (Doc. 113, pp. 92-101.)

14  However, Plaintiff crossed out this sentence wrote above this redaction, "The above examples

15  demonstrate a pattern of lawlessness & abuse at PVSP."  (*Id.* at p. 96.)  **Such blatant**

16  **falsification of evidence submitted to the Court is unacceptable, appalling, and causes the**

17  **Court to question the veracity of Plaintiff's assertions**.  The falsified copy of IA No. 06-1738

18  that Plaintiff submitted is disregarded.  **Plaintiff is admonished that further attempts to falsify**

19  **evidence or to be, in any way, dishonest with this Court will result in a recommendation**

20  **that terminating sanction be issued and the matter be dismissed.**

21         A grievance need not contain every fact necessary to prove each element of an eventual

22  legal claim.  *Griffin v. Arpaio* 557 F.3d 1117, 1120 (9th Cir. 2009).  However, "[t]he primary

23  purpose of a grievance is to notify the prison of a problem and facilitate its resolution . . . ."  *Id.,*

24  *ref Johnson v. Johnson*, 385 F.3d 503, 522 (2004), *cited with approval in Jones v. Bock,* 549 U.S.

25  199, 219 (2007).  A prisoner's grievance(s) must "provide enough information . . . to allow prison

26  officials to take appropriate responsive measures."  *Johnson v. Testman*, 380 F.3d 691, 697 (2nd

27  Cir. 2004).  Plaintiff's comment in Defendants' copy of IA No. 06-1738, that the preceding

28  "examples" (which addressed his claims against C/O Redding, C/O Franco, and Sgt. Mc Bride in

Claims 12-14) "are not at issue here, they are just used as supporting evidence.  They will be addressed in separate complaints" (Doc. 103-4, pp. 25), negated any notice that IA No. 06-1738 may have otherwise given prison personnel to investigate his claims of excessive force against C/O Redding, C/O Franco, and Sgt. McBride.  Plaintiff *specifically* instructed prison officials that he would address these complaints in separate complaints so that these allegations did not notify them of a problem needing investigation and resolution.

### c. Finding

The Court finds, as to Plaintiff's Claims 12-14, that Defendants have met their initial burden of informing the Court of the basis for their motion and identifying admissible evidence to demonstrate that Plaintiff failed to exhaust available administrative remedies prior to filing this action.  The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually exists.  *See Matsushita,* 475 U.S. at 586.

However, Plaintiff fails to establish either that he filed an IA on the issues asserted in Claims 12-14 and pursued it as required, or that his failure to exhaust was excused since the administrative grievance process was rendered unavailable to him through no fault of his own. *Sapp v. Kimbrell*, 623 F.3d at 822-23; *Nunez*, 591 F.3d at 1224; *Brown*, 422 F.3d at 939-40.

Thus, Defendants' motion for summary judgment for Plaintiff's failure to exhaust available administrative remedies prior to filing suit on **Claims 12-14** should be **GRANTED**.

### 3. Claims 16 and 17[12]

### a. Defendants' Motion[13]

Defendants assert that Plaintiff did not submit any grievance complaining about denial of medical care or the conditions of his confinement in the Program Office or Building 1 on May 2 to 4, 2006 to pursue Claims 16 and 17 against Lt. Herrera, Sgt. McBride, LVN Hall, and C/O Lee. (Doc. 103-1, p. 19 citing DUFs 70-106.)  Defendants anticipate that Plaintiff will oppose this motion by arguing that IA No. 06-1738 that Plaintiff filed against C/O Tucker,[14] was sufficient to

---

[12] See sections V.C.1. & 2. hereinabove for the factual allegations of Claims 16 and 17.

[13] Defendants admit that Plaintiff exhausted available administrative remedies and do not seek summary judgment thereon regarding his allegations against Defendant Tucker in Claim 17.  (*See* Doc. 103-1, p. 16.)

[14] Defendants do not challenge the sufficiency of IA No. 06-1738 on Plaintiff's allegations in Claim 17 against

1    put prison officials on notice that he was denied medical care while housed in Building 1, such

2    that he can pursue his claims against LVN Hall, C/O Lee, and Sgt. McBride.

3          Defendants assert that IA No. 06-1738 specifically complains about C/O Tucker and his

4    alleged misconduct.  (*Id.*, citing DUF 74.)  Although Plaintiff makes vague allegations of a

5    conspiracy between C/O Tucker and unidentified staff, Defendants argue that he did not allege in

6    No. 06-1738 that medical staff (such as LVN Hall) denied him medical care or that another

7    housing officer in Building 1 (such as C/O Lee) also refused to provide him with or summon

8    medical care.  (*Id.*)  Defendants argue that Plaintiff's ambiguous allegations about a conspiracy,

9    coupled with his specific complaints about C/O Tucker, did not "alert the prison of the nature of

10   the wrong for which redress is sought."  (*Id.* quoting *Griffin*, 557 F.3d at 1120.)

11                        **b.  Plaintiff's Opposition**

12         Plaintiff opposes this part of Defendants' motion by arguing that he exhausted the

13   available administrative remedies on Claims 16 and 17 in IA No. 06-1738 and IA No. 07-00137 -

14   - both of which he attached as exhibits to his opposition.  (Doc. 113, pp. 13-14, 79-100.)

15         IA No. 07-00137 clearly covered Plaintiff's allegations in Claim 17 against LVN Hall.

16   (Doc. 113, pp. 79-91.)  Defendants' assertion that Plaintiff failed to raise any of his allegations

17   from Claim 17 in IA No. 07-00137 is in error.  At the informal level of IA No. 07-00137, Plaintiff

18   stated that his ankle was fractured on May 2, 2006 from being hit with an officer's baton during

19   an altercation and that,

20         a few minutes afterwards M.T.A. Hall examined me while I was standing
21         in the telephone booth type holding cage at the program office.  He
           determined that the back of my thigh was reddened with active bleeding,
22         but he did not treat it with disinfectant or bandages.  He provided no
           treatment whatsoever.  MTA Hall also determined that my left ankle was
23         reddened and swollen, and stated that it needed to be x-rayed.  He gave me
           some Ibuprofen but I received no x-rays.  Instead, I was left standing in the
24         holding cage for about an hour.  The cage has no place to sit, so I had to
           stand on my broken ankle this entire time.
25         . . .
26            For the next two days I was given no medical treatment whatsoever, no
           medical personnel ever came to speak with me.  I was just put in a cell with
27

28   Defendant Tucker.

                                      37

a broken ankle and forgotten about, although M.T.A. Hall previously said I
needed x-rays.  I was given nothing to use to keep my foot elevated,
although M.T.A. Hall advised me to keep it elevated.  During those two
days I had to walk on my broken ankle in my cell many times . . . .

(Doc. 113, pp. 79-81.)  The First Level Response noted:  "The appellant states MTA Hall

observed the injury and did not provide any type of medical care."  (*Id.*, at p. 85.)  The Second

Level Response repeated this sentence verbatim.  (*Id.*, at p. 87.)  The Director's Level Appeal

Decision noted among Plaintiff's arguments:  "The appellant alleges Medical Technical Assistant

Hall observed the injury occur; however, provide no medical attention" and noted in the findings:

"The appellant alleges he did not receive adequate health care intervention and is requesting

monetary compensation. . . ."  (*Id.*)  Thus, IA No. 07-00137 suffices to exhaust available

administrative remedies on Plaintiff's in Claim 17 against LVN Hall for his failure to provide

assistive devices and necessary medical treatment in violation of the Eighth Amendment.

   In their reply, Defendants argue that IA No. 07-00137 does not suffice for exhaustion

purposes on Claim 17 against LVN Hall because Plaintiff did not submit it until November 6,

2006, approximately six months after the events at issue, and well beyond the 15 day time limit of

section 3084.6(c) of Title 15.  (Doc. 118, 6:12-24.)  However, "a prisoner exhausts 'such

administrative remedies as are available,' 42 U.S.C. § 1997e(a), under the PLRA despite failing

to comply with a procedural rule if prison officials ignore the procedural problem and render a

decision on the merits of the grievance at each available step of the administrative process."

*Reyes v. Smith*, --- F.3d ---, 2016 WL 142601, *3 (9th Cir. Jan. 12, 2016).  Thus, if IA No. 07-

00137 had been screened out as untimely, it would not suffice for exhaustion purposes.  However,

since prison personnel did not reject it for untimeliness, but rather addressed the merits of the

issues presented, IA No. 07-00137, this fulfills the exhaustion requirements for Claim 17 against

LVN Hall.

   Defendants are not moving for summary judgment on Claim 17 against C/O Tucker on

exhaustion issues, which IA No. 06-1738 clearly covers.  Plaintiff's allegations against C/O Lee

in Claim 17 parallel his allegations against C/O Tucker.  Plaintiff alleges that C/Os Lee and

Tucker came by his cell on different occasions during the two days that he received no medical

1   treatment; that he asked them for medical attention and showed them his "football-sized" ankle;

2   but that neither of them summoned medical staff.  (*See* Doc. 22, pp. 29-36.)  IA No. 06-1738

3   clearly covers Plaintiff's allegations against C/O Tucker and notes that other prison staff were

4   involved in denying him access to medical treatment.  (*See* Doc. 113, pp. 92-100.)  Defendants

5   argue that Plaintiff's use of the word "conspiracy" does not extend the breadth of this IA to cover

6   Plaintiff's allegations against any other Defendants in this action.  However, this IA made it clear

7   that Plaintiff was complaining that more prison staff than just C/O Tucker were involved in

8   hampering his access to medical care, but that Plaintiff did not know their names (as the

9   Director's Level decision noted Plaintiff's request that other prison staff on duty at that time be

10   identified).  (*See id.*, at p. 100.)

11          "Exhaustion is not *per se* inadequate under the PLRA when an individual later sued was

12   not named in the grievance . . . .  The 'applicable procedural rules' that a prisoner must properly

13   exhaust, . . . , are defined not by the PLRA, but by the prison grievance process itself."  *Jones*,

14   549 U.S. at 201 citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  Where a prison's grievance

15   process does not specifically require a prisoner to identify offending prison staff in an inmate

16   appeal, the failure to do so will not be seen as a *per se* failure to exhaust a claim against a

17   defendant who was not named in the prison grievance process.  *Jones*, 549 U.S. at 200-201.

18   Further, "if prison regulations do not prescribe any particular content for inmate grievances, 'a

19   grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.  As

20   in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or

21   demand particular relief.  All the grievance need do is object intelligibly to some asserted

22   shortcoming.'"  *Johnson*, 380 F.3d at 697 quoting *Strong v. David*, 297 F.3d 646, 650 (7th

23   Cir.2002).  The Ninth Circuit held that *Strong* set the appropriate standards for prisoner

24   grievances to meet so as to sufficiently notify prison personnel of a problem for exhaustion

25   purposes.  *Griffin v. Arpaio*, 557 F.3d 1117, 1120.

26          Thus, IA No. 06-1738 intelligibly raised the issues that correctional staff saw his painful,

27   "football-size" swollen ankle and failed to summon medical staff which Plaintiff repeatedly

28   requested.  This is the basis for Claim 17 against both C/Os Tucker and Lee.  Plaintiff did not

1   know Lee's name and could not have listed him.  Thus, it sufficed to exhaust available

2   administrative remedies on Claim 17 against C/Os Tucker and Lee.

3   However, neither IA No. 06-1738, nor IA No. 07-00137 in any way address the

4   allegations in Claim 16 that Sgt. McBride and Lt. Herrera for forcing Plaintiff to be held in a

5   "telephone-booth" sized cell where he was forced to stand and unable to sit or elevate his injured

6   ankle despite their awareness that it was probably broken and Plaintiff's complaints of "extreme

7   pain."  Thus, Plaintiff fails to show that he exhausted available administrative remedies on his

8   allegations in Claim 16.

9   **c.  Finding**

10  The Court finds that Defendants have met their initial burden of informing the Court of

11  the basis for this motion and identifying admissible evidence to demonstrate that Plaintiff failed

12  to exhaust available administrative on Claims 16 and 17.  The burden therefore shifts to Plaintiff

13  to establish that a genuine issue as to any material fact actually exists.  *See Matsushita,* 475 U.S.

14  at 586.

15  Plaintiff submitted evidence that he exhausted available administrative remedies on Claim

16  17 against LVN Hall in IA No. 07-00137 and on Claim 17 against C/Os Tucker and Lee in IA

17  No. 06-1738, but not on Claim 16 against Sgt. McBride and Lt. Herrera.

18  The Court finds that Plaintiff exhausted the available administrative remedies on his

19  allegations in **Claim 17** against LVN Hall, C/O Tucker, and C/O Lee such that Defendants'

20  motion for summary judgment thereon should be **DENIED**, but that Plaintiff failed to exhaust the

21  available administrative remedies on his allegations in **Claim 16** against Sgt. McBride and Lt.

22  Herrera such that Defendants' motion for summary judgment thereon should be **GRANTED**.

23  **E.  Qualified Immunity**

24  Defendants also move for summary judgment based on qualified immunity to all of

25  Plaintiff's allegations.  (Doc. 103-1, pp. 26-27.)  Defendants' entitlement to qualified immunity

26  need only be addressed on the remaining claim -- 17.

27  Government officials enjoy qualified immunity from civil damages unless their conduct

28  violates "clearly established statutory or constitutional rights of which a reasonable person would

1    have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In ruling upon the issue of

2    qualified immunity, there are two prongs of inquiry:  "(1) whether 'the facts alleged show the

3    official's conduct violated a constitutional right; and (2) if so, whether the right was clearly

4    established' as of the date of the involved events 'in light of the specific context of the case.' "

5    *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) quoting *Robinson v. York*, 566 F.3d

6    817, 821 (9th Cir. 2009).  These prongs need not be addressed by the Court in any particular

7    order.  *Pearson v. Callahan* 555 U.S. 223 (2009).  In determining whether a government official

8    should be granted qualified immunity, the facts are to be viewed "in the light most favorable to

9    the injured party." *Chappell v. Mandeville*, 706 F.3d 1052, 1058 (9th Cir. 2013) quoting *Saucier

10    v. Katz*, 533 U.S. 194, 201 (2001), *receded from on other grounds by Pearson*, 355 U.S. at 817-

11    21; *see also Bryan v. MacPherson*, 630 F.3d 805, 817 (9th Cir. 2010).

12        Defendants assert that they did not violated Plaintiff's constitutional rights and their

13    conduct was "objectively reasonable even under Harbridge's set of facts."  (Doc. 103-1, 27:3-7.)

14    The Court declines to address whether Defendants are entitled to qualified immunity on

15    Plaintiff's claims upon which it has already found Defendants are entitled to summary judgment.

16    Thus, since Defendants are not entitled to summary judgment based on Plaintiff's failure to

17    exhaust available administrative remedies prior to filing suit or on the merits of Claims 16 and 17,

18    the Court analyzes these claims only for qualified immunity purposes.

19        Claim 17 is against LVN Hall for failing to provide Plaintiff crutches and/or assistive

20    devices and an x-ray when he believed that Plaintiff's ankle was broken and against C/Os Lee and

21    Tucker for failing to summon medical care on May 3 and May 4, 2006 when they saw that

22    Plaintiff's ankle was swollen to the size of a football, Plaintiff complained to them that he was in

23    excruciating pain, and Plaintiff requested them to summon medical attention.

24        Prison officials violation of the Eighth Amendment if they are "deliberate[ly] indifferen[t]

25    to [a prisoner's] serious medical needs," *Estelle v. Gamble*, 429 U.S. at 104, and the law which

26    equated Plaintiff's broken ankle to a serious medical need was well established long before the

27    events that occurred in this action.  *See Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014)

28    (citation and internal quotation marks omitted); *accord Wilhelm v. Rotman*, 680 F.3d 1113, 1122

41

(9th Cir. 2012); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). Further, for purposes of their motion, Defendants do not dispute that the injuries to Plaintiff's ankle and thigh amounted to a sufficiently a serious medical need. (*See* Doc. 103-1, 24:3-6.)

Plaintiff's ankle, which LVN Hall believed was broken, required both x-rays and elevation, and was causing Plaintiff excruciating pain equates to a serious medical need to which LVN Hall was deliberately indifferent when he failed to provide Plaintiff with assistive devices for ambulation and to which C/Os Lee and Tucker were deliberately indifferent when they failed to summon medical services on May 3-4, 2006 despite seeing the swelling and discoloration of it, combined with Plaintiff complaining of excruciating pain and requesting they call medical services. The request by C/O Lee, C/O Tucker, and LVN Hall for summary judgment on qualified immunity grounds on **Claim 17** should be **DENIED**.

## VI.    Conclusions and Recommendations

Accordingly, for the reasons set forth herein, the Court **RECOMMENDS** that the motion for summary judgment filed by Defendants Brown, Collier, Franco, Hall, Herrera, Lee, McBride, Munoz, Redding, Reeves, Singleton, Trimble, and Tucker, filed on May 8, 2015 (Doc. 103) be granted and denied as follows:

1.    GRANTED on the merits as to Claim 1 against Defendants Trimble, Brown, Reeves, Munoz, and Singleton;

2.    DENIED on the merits of Claim 9 against Defendants Brown, Reeves, and Collier;

3.    DENIED on the merits of Claim 16 against Defendants Herrera and McBride;

4.    DENIED on the merits of Claim 17 against Defendants Hall and Lee;

5.    GRANTED for Plaintiff's failure to exhaust administrative remedies on Claim 9 against Defendants Brown, Reeves, and Collier;

6.    GRANTED for Plaintiff's failure to exhaust administrative remedies on Claims 12, 13, and 14 against Defendants Redding, Franco, and McBride;

7.    GRANTED for Plaintiff's failure to exhaust administrative remedies on Claim 16 against Defendants Herrera and McBride; and

8.    DENIED as Plaintiff exhausted administrative remedies on Claim 17 against

1    Defendants Hall and Lee.

2    This action should thereafter proceed only on Claim 17 against Defendants Hall, Lee and

3    Tucker.

4    These Findings and Recommendations will be submitted to the United States District

5    Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  **Within 30**

6    **days** after being served with these Findings and Recommendations, the parties may file written

7    objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

8    Findings and Recommendations."  The parties are advised that failure to file objections within the

9    specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834,

10   839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

11

12   IT IS SO ORDERED.

13   Dated:  __February 11, 2016__          _____**/s/ Jennifer L. Thurston**

14                                           UNITED STATES MAGISTRATE JUDGE