1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CHRISTOPHER HARBRIDGE,                No. 1:10-cv-00473-DAD-JLT

12              Plaintiff,                 PRETRIAL ORDER

13        v.                               Motion *in Limine* Deadline: April 18, 2017

14   HALL et al.,                          Motion *in Limine* Responses: April 25, 2017

15              Defendants.                Motion *in Limine* Hearing and Jury Trial:
                                           May 2, 2017, at 1:00 p.m., in Courtroom 5
16

17

18

19        Plaintiff Christopher Harbridge is a state prisoner proceeding *pro se* and *in forma pauperis*

20   in this civil rights action.  Defendants Hall, Lee, and Tucker are represented by Deputy Attorney

21   General Diana Esquivel.  Pursuant to Federal Rule of Civil Procedure 16(e), the court now issues

22   its final pretrial order.

23   I.        SUMMARY

24        Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 on March 16, 2010.

25   This action is proceeding to trial on Claim 17, as stated in plaintiff's second amended complaint,

26   against defendants Hall, Lee, and Tucker for deliberate indifference of his serious medical need in

27   /////

28   /////

                                          1

violation of the Eighth Amendment.[1]

II.    JURISDICTION AND VENUE

The court has subject matter jurisdiction over this federal civil rights action.  28 U.S.C. § 1331.  Venue is proper because the conduct allegedly occurred in this judicial district.  28 U.S.C. § 1391.

III.    TRIAL

The parties demand a trial by jury.  Fed. R. Civ. P. 38(b).  The trial of this matter is scheduled to commence at **1:00 p.m. on May 2, 2017**, in Courtroom 5, before United States District Judge Dale A. Drozd.

IV.    FACTS

A.    Undisputed Facts

1.    Plaintiff is a prisoner in custody at the California Department of Corrections and Rehabilitation ("CDCR") and has been incarcerated at Pleasant Valley State Prison ("PVSP") since 2005.  Plaintiff is serving a life sentence for his 1997 conviction for second degree murder.

2.    At all times relevant to this lawsuit, defendant Hall was a Licensed Vocational Nurse at PVSP, defendant Lee was a Correctional Officer at PVSP, and defendant Tucker was a Correctional Officer at PVSP.  All defendants were acting under color of state law.

/////

/////

---

[1] On February 20, 2013, the court dismissed all but the following claims from the Second Amended Complaint: Claims 1, 9, 12, 13, 14, 16, 17, 18, 19, and 21.  (*See* Doc. Nos. 28, 30.)  On July 10, 2015, after determining that plaintiff failed provide sufficient information to locate certain defendants for service of summonses, the court dismissed defendants Ferro, Benyamin, and Dishman—and Claims 18, 19, and 21 against them—from the action pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  (*See* Doc. Nos. 99, 108.)  On July 27, 2016, the court dismissed the following claims on defendants' motion for summary judgment: Claims 1, 9, 12, 13, 14, and 16.  (*See* Doc. Nos. 122, 128.)  Accordingly, this action currently proceeds only on plaintiff's Claim 17 against defendants Hall, Lee, and Tucker.  Plaintiff recently filed a motion to revive Claims 18, 19, and 21, and for service of the complaint on defendants Ferro, Benyamin, and Dishman. (Doc. No. 147.)  That motion will be separately addressed by the court.

3. The incident giving rise to this claim occurred on the evening of May 2, 2006.

   a. Plaintiff had been released from administrative segregation to be housed in Building 4, Facility A at PVSP.

   b. At approximately 6:45 p.m., plaintiff was involved in a physical altercation with a prospective cellmate in the dayroom of Building 4. Plaintiff was thereafter escorted out of the building.

   c. Plaintiff later returned to Building 4. At around 8:54 p.m., plaintiff assaulted another prospective cellmate.

   d. During this second altercation, an officer struck plaintiff on the left ankle and left thigh with an expandable baton to stop the assault.

   e. After this second altercation, plaintiff was escorted to the Facility A Program Office and placed in a holding cell.

4. Defendants Hall, Lee, and Tucker, were not present during the physical altercation in Building 4.

5. That same evening, on May 2, 2006, at approximately 9:00 p.m., defendant Hall evaluated plaintiff's injuries in the Program Office and noted that plaintiff had a swollen left ankle and a cut that was bleeding on his left thigh.

6. Defendant Hall retrieved a wheelchair for plaintiff.

7. Defendant Hall did not receive a call from anyone regarding plaintiff for the remainder of his shift.

8. Defendant Hall had no further interaction with plaintiff after May 2, 2006, nor was defendant Hall informed that plaintiff had required or requested medical care.

9. When plaintiff left the Program Office the night of May 2, 2006, he was sent to a cell on the second floor of Building 1, Facility A, where defendants Lee and Tucker were the second-watch floor officers from 6:00 a.m. to 2:00 p.m.

10. On May 4, 2006, plaintiff submitted a request for medical care. In addition to requesting medication for other ailments, plaintiff also requested that his foot be x-rayed because he could not walk.

3

11. On May 5, 2006, at or around 1:00 a.m., plaintiff was treated for his complaints of ankle pain. Medical staff x-rayed plaintiff's ankle and discovered a small distal fracture. A cast was placed on plaintiff's ankle that same day.

B. Disputed Factual Issues

1. Whether defendant Hall believed plaintiff's ankle was possibly broken and informed former defendants Herrera and McBride.

2. Whether defendant Hall knew plaintiff required medical treatment.

3. Whether defendant Hall refused to treat plaintiff's injuries from May 2 to 4, 2006.

4. Whether plaintiff refused to go to the Treatment & Triage Area ("TTA") and instead insisted on going back to his cell and refused to provide any information about his symptoms or injuries.

5. Whether defendant Hall called the nurse on duty in the TTA to seek advice on how to proceed regarding plaintiff's injuries and was advised to put ice on plaintiff's ankle, provide Motrin to control the pain and swelling, and that an x-ray would be ordered for plaintiff the following morning.

6. Whether defendant Hall followed the nurse's instructions and whether plaintiff was uncooperative and refused treatment.

7. Whether defendant Hall informed plaintiff that if he changed his mind, Hall would call the housing officers and send plaintiff to the TTA.

8. Whether plaintiff requested assistance to get to his cell on the second floor and/or walked up the stairs on his own.

9. Whether defendants Lee and Tucker were aware that plaintiff had a serious medical need, which they ignored while plaintiff was housed in Building 1 from May 2 to 4, 2006.

10. Whether defendant Lee failed to summon medical care for plaintiff's broken ankle while housed in Building 1 from May 2 to 4, 2006.

11. Whether plaintiffs' injuries (the laceration on his left thigh and distal fracture on his left ankle) amounted to a serious medical condition.

4

12. Whether any defendant acted maliciously, oppressively, recklessly, or with evil intent from March 2 to 4, 2006.

13. Whether any of the defendants' conduct on May 2 to 4, 2006 violated plaintiff's constitutional rights, and if so, would a reasonable prison official in defendants' position believe that their conduct was lawful or reasonable under the circumstances.

C. Disputed Evidentiary Issues[2]

    (1) Plaintiff's Evidentiary Disputes

1. Plaintiff objects to the introduction of the Interdisciplinary Progress Notes dated 5-2-06 by defendant Hall on hearsay grounds and because the document was fabricated.

2. Plaintiff objects to introduction of the statement "Refused medical care until requesting ER attention tonight" found in the "Encounter Form" dated 5-5-06 by R.N. Engbrecht on hearsay grounds and because it is false.

3. Plaintiff objects to the testimony introduction of testimony of former defendants Benyamin and Ferro for the reasons stated in his motion *in limine*.

4. Plaintiff objects to the admittance of any testimony by the 10 expert witnesses listed in defendants' expert disclosures, or any other witnesses, pertaining to their "observation of plaintiff's behavior" for the reasons stated in plaintiff's motion *in limine*.

5. Plaintiff reserves the right to raise objections to other evidence presented by defendants.

    (2) Defendants' Evidentiary Disputes

1. Defendants object to plaintiff testifying about the diagnosis and prognosis of his left ankle injury and any residual effects of which he now complains. Defendants object that plaintiff is not qualified to give testimony about the cause and effect, diagnosis, or prognosis of his medical condition and that he is not qualified to interpret medical records.

---

[2] The parties may file motions *in limine*, addressed in section XX(A)(1), and/or object to the introduction of evidence at trial. Any objections that the parties state are in their motions *in limine*, though duplicated here, will be ruled on at the hearing on motions *in limine*.

2.     Defendants intend to file motions *in limine* to preclude plaintiff from testifying, eliciting testimony, or introducing evidence of the following matters: (a) dismissed defendants and claims and unrelated claims and individuals; (b) defendants' involvement in other lawsuits, incidents, or inmate appeals alleging denial of medical care or other misconduct; (c) plaintiff's theories that defendants and their counsel conspired to fabricate evidence; (d) reference to other lawsuit suits, litigation, or court-orders involving defendants' attorneys; (e) offers to compromise; and (f) CDCR's indemnification of an adverse judgment.

3.     Defendants will file a motion *in limine* to exclude all witnesses listed in plaintiff's pretrial statement absent an offer of proof that they have personal knowledge or relevant information about the events of May 2006.

4.     Defendants will file a motion *in limine* to permit them to introduce evidence of plaintiff's and any incarcerated witness's felony conviction and length of sentence for impeachment purposes.

5.     Defendants anticipate objecting to many of plaintiff's proposed trial exhibits, and will move to preclude plaintiff from using any document that was timely requested but not produced during discovery.

6.     Defendants reserve the right to file any other motion *in limine* as issues may arise during pretrial and trial proceedings.

D.     Special Factual Information

None.

V.     RELIEF SOUGHT

Plaintiff seeks "three billion dollars" in compensatory damages, "three billion dollars" in punitive damages, court costs, trial costs, filing fees, attorney fees, and such further relief as the court deems proper.[3]

Defendants seek judgment in this case and costs

/////

---

[3] Plaintiff is not confined to seeking damages in the amount identified in his amended complaint. Fed. R. Civ. P. 54(c).

VI.     POINTS OF LAW

    A.     Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Section 1983 provides a cause of action for the violation of plaintiff's constitutional rights by persons acting under color of state law. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). To prevail on his inadequate medical care claim, plaintiff must demonstrate a link between actions or omissions of defendant and the violation of his Eighth Amendment rights; there is no *respondeat superior* liability under section 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009); *Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Moss v. U.S. Secret Service*, 711 F.3d 941, 967–68 (9th Cir. 2013); *Lacey v. Maricopa County*, 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc); *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010).

    B.     Deliberate Indifference to Serious Medical Needs

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in ' "significant injury or the unnecessary and wanton infliction of pain." ' " *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (en banc)).

To maintain an Eighth Amendment claim based on alleged inadequate medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton

inflition of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation and internal quotation marks omitted); *accord Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley*, 475 U.S. at 319). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.*at 847. In medical care cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett,* 439 F.3d at 1096, citing *McGuckin*, 974 F.2d at 1060.

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

/////

C.     Qualified Immunity

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, --- U.S. ---, ---, 135 S. Ct. 2042, 2044 (2015) (quoting *Reichle v. Howards*, 566 U. S. 658, ---, 132 S. Ct. 2088, 2093 (2012)). Qualified immunity analysis requires two prongs of inquiry: "(1) whether 'the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established' as of the date of the involved events 'in light of the specific context of the case.'" *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) (quoting *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009). These prongs need not be addressed in a particular order. *Pearson v. Callahan*, 555 U.S. 223 (2009).

To determine whether a government official should be granted qualified immunity, under the first prong, the facts are to be viewed "in the light most favorable to the injured party." *Chappell v. Mandeville*, 706 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. at 817-21; *see also Bryan v. MacPherson*, 630 F.3d 805, 817 (9th Cir. 2010)). However, the existence of a material factual dispute does not necessarily preclude a finding of qualified immunity. *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1053 (9th Cir. 2002).

Under the second prong, clearly established law is not to be defined "at a high level of generality." *White v. Pauly*, --- S. Ct. ---, ---, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)); *see also Mullenix v. Luna*, --- U.S. ---, 136 S. Ct. 305, 308 (2015) (quoting *al-Kidd*, 563 U.S. at 742). "The dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Ibid*. (emphasis added in *Mullinex*). "This inquiry ' " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " ' " *Id*., (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001))). "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning" to officers, *White*, 137 S. Ct. at 552 (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)), but "in the light of pre-existing law the unlawfulness must be

apparent," *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The relevant inquiry is whether existing precedent placed the conclusion that [the defendant] acted unreasonably in the [specific circumstances confronted] 'beyond debate.'" *Mullenix*, 136 S. Ct. at 309 (quoting *al-Kidd*, 563 U.S. at 741).

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichel*, 132 S. Ct. at 2092; *see also Castro v. County of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743 (citation and internal quotation marks omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 741. "[A] 'robust consensus of cases of persuasive authority'" in the Courts of Appeals could establish the federal right [in question]." *City and County of San Francisco v. Sheehan*, --- U. S. ---, ---, 135 S. Ct. 1765, 1778 (2015).

D.    Punitive Damages

Plaintiff has the burden of proving what, if any, punitive damages should be awarded by a preponderance of the evidence. Ninth Circuit Model Civil Jury Instructions § 5.5 (2007). In order to award punitive damages, the jury must find that defendant's conduct was "motivated by evil motive or intent, or . . . involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1986). Acts or omissions which are malicious, wanton, or oppressive support an award of punitive damages. *Dang v. Cross*, 422 F.3d 800, 807-08 (9th Cir. 2005).

E.    Federal Rules of Evidence

Federal Rules of Evidence 608 and 609 provide that evidence of a witness's prior felony conviction or instance of conduct demonstrating a propensity to lie may be used to impeach that witness's testimony.[4] Federal Rule of Evidence 404(b) provides that evidence of prior crimes,

---

[4] If a conviction is more than ten years old, defendant is required to comply with Federal Rule of Evidence 609(b) if he seeks to impeach plaintiff with his conviction. *Simpson v. Thomas*, 528 F.3d 685, 690-91 (9th Cir. 2008).

wrongs, or acts cannot be used to prove the character of the person in order to show conduct in conformity with that character trait. Such prior acts may be admissible for other purposes only, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.*

VII.   ABANDONED ISSUES

The court previously granted summary judgment in favor of defendants Trimble, Brown, Reeves, Munoz, Singleton, McBride, Collier, Redding, Franco, and Herrera on all claims against them. (Doc. No. 128.) Consequently, these defendants have been dismissed from this action. Other than this, the parties have not abandoned any issues.

VIII.   WITNESSES[5]

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses. **NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."** Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

A.   Plaintiff's Witness List[6]

1.   Christopher Harbridge, plaintiff, (PVSP) (CDCR # K-61356)

2.   D. Hall, defendant (may be contacted through his attorneys of record)

3.   T. Lee, defendant (may be contacted through his attorneys of record)

4.   W. Tucker, defendant (may be contacted through his attorneys of record)

It is noted that plaintiff identified inmate William Sutherland, CDCR #T-59697 in his Pretrial Statement list of witnesses. (Doc. 145, p. 11.) However, plaintiff did not list Sutherland in his motion for attendance of incarcerated witnesses. (Doc. 146.) Thus, plaintiff has failed to make the requisite showing to obtain inmate Sutherland's transport for appearance and may not

---

[5] All parties will be allowed to call themselves and opposing parties as witnesses.

[6] Plaintiff's motion for attendance of incarcerated witnesses is denied by separate order of the court.

11

1    call him as a witness at the trial in this matter.

2         B.    Defendant's Witness List[7]

3         1.    Christopher Harbridge, plaintiff, (PVSP) (CDCR # K-61356)

4         2.    D. Hall, defendant (may be contacted through his attorneys of record)

5         3.    T. Lee, defendant (may be contacted through his attorneys of record)

6         4.    W. Tucker, defendant (may be contacted through his attorneys of record)

7         5.    Sheree Engbrecht, R.N. (address previously provided with expert disclosures)

8         6.    Nancy J. Harrod, R.N. (address previously provided with expert disclosures)

9         7.    Richard T. Ferro, M.D. (address previously provided with expert disclosures)

10        8.    Hani A. Benyamin, M.D. (address previously provided with expert disclosures)

11        9.    Indravadan A. Dave, M.D. (address previously provided with expert disclosures)

12        10.    Eric Leveque, D.O. (address previously provided with expert disclosures)

13        11.    John N. Chokatos, M.D. (address previously provided with expert disclosures)

14        12.    Jeffrey L. Tanji, M.D. (address previously provided with expert disclosures)

15        13.    Custodian(s)[8] of Records for Plaintiff's central file and medical records with

16               CDCR (PVSP)

17        14.    E. Redding Correctional Officer (PVSP) -- rebuttal only

18        15.    E. McBride, Sergeant (PVSP) -- rebuttal only

19    IX.    EXHIBITS

20         The following is a list of documents or other exhibits that the parties expect to offer at

21    trial. Plaintiff's exhibits are presented as [Date (Author) Description]. **NO EXHIBIT, OTHER**

22    **THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE**

---

[7] Defendant is not required to call all of the witnesses listed. However, as is the court's general practice in civil rights actions brought by prisoner's on their own behalf, witnesses the defense plans to call shall be present on the first day of trial and shall be available for plaintiff to call for direct examination in his case in chief.

[8] Defendants represent that, although the custodians of records will be available to testify at trial, to avoid undue expense and absent any genuine dispute about the authenticity of the documents to be presented, defendants request that these witnesses be permitted to authenticate documents by their declarations.

PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

A. Plaintiff's Exhibits

1. 5-2-06 (Hall) CDC 7230 Interdisciplinary Progress Notes
2. 5-2-06 (Hall) CDCR 7219 Medical Report of Injury or Unusual Occurrence, Re/Harbridge
3. 5-2-06 (Long, MTA) CDCR 7219 Medical Report of Injury or Unusual Occurrence, Re/ I/M Gentry
4. 5-2-06 (Sgt. McBride) General Chrono, Order for Modified Program Status
5. 5-2-06 (C.O. Mendez) CDC 837-C, Crime / Incident Report
6. 5-3-06 (Lt. Herrera) CDC 837-A1, Page 2 of 6
7. 5-3-06 (Lt. Herrera) CDC 837-Al, Page 3 of 5
8. 5-4-06 (Harbridge) CDC 7362, Health care Services Request Form
9. 5-5-06 (R.N. Engbrecht) Encounter Form: Miscellaneous / Multiple Systems Complaints
10. 5-5-06 (R.N. Engbrecht) CDC 7221, Physician's Orders
11. 5-5-06 (Lt. Corely) CDC 114-D, Administrative Segregation Unit Placement Notice
12. 5-8-06 (Dr. Benyamin) CDC 7221, Physician's Orders
13. 5-9-06 (Dr. Leveque) University Medical Center, Department of Medical Imaging
14. 5-9-06 (R.N. Moore) University Medical Centers, Nursing Assessment Record, 2 Pages
15. 5-9-06 (Unknown) University Medical Center, Emergency Physician Record
16. 5-9-06 (Dr. Benyamin) CDCR 7230, Interdisciplinary Progress Notes
17. 5-9-06 (Dr. Benyamin) CDC 7221, Physician's Orders
18. 5-10-06 (L.V.N. Dishman) CDC 7221, Physician's Orders
19. 5-15-06 (C/O Redding) CDC 115, Rules Violation Report

20. 5-16-06 (Unknown) CDC 7254, Outpatient Interdisciplinary Progress Notes

21. 6-27-06 (Unknown) CDCR 7230, Interdisciplinary Progress Notes

22. 6-27-06 (Unknown) CDC 7221, Physician's Orders

23. 6-27-06 (Unknown) CDC 7254, Outpatient Interdisciplinary Progress Notes

24. 6-27-06 (Dr. Deguchi) Radiology Report

25. 6-28-06 (Harbridge) CDC 7362, Health Care Services Request Form

26. 7-3-06 (Unknown) CDC 7254, Outpatient Interdisciplinary Progress Notes

27. 7-11-06 (Medical Staff) Receipt for Copies of Unit Health Record Information

28. 7-25-06 (Dr. Benyamin) Outpatient Interdisciplinary Progress Notes

29. 7-25-06 (Dr. Benyamin) CDC 7243, Health Care Services Physician Request for Services

30. 8-9-06 (Harbridge) CDC 7362, Health Care Services Request Form

31. 9-5-06 (Unknown) CDC 7410, Comprehensive Accommodation Chrono

32. 9-5-06 (R.N. Coleman) CDC 7221, Physician's Orders

33. 9-5-06 (R.N. Coleman) CDC 7254, Outpatient Interdisciplinary Progress Notes

34. 10-19-06 (Unknown) CDC 7410, Comprehensive Accommodation Chrono

35. 10-19-06 (Unknown) CDC 7221, Physician's Orders

36. 10-19-06 (Unknown) CDC 7254, Outpatient Interdisciplinary Progress Notes

37. 11-5-06 (Harbridge) Letter to UMN or Scheduling Nurse

38. 11-6-06 (Harbridge) CDC 7362, Health Care Services Request Form

39. 12-5-06 (Dr. Castillo) CDC 7410, Comprehensive Accommodation Chrono

40. 12-5-06  (Dr. Castillo) CDC 7221, Physician's Orders

41. 12-5-06 (Dr. Castillo) CDC 7254, Outpatient Interdisciplinary Progress Notes

42. 2-16-07 (Dr. Tamji) Letter recommending MRI, 2 Pages

43. 1-2-08 (Dr. Vilaysane) CDC 7410, Comprehensive Accommodation Chrono

44. 4-3-14 (Dr. Chokatos) CDC 7243, Physician Request for Services

45. 5-6-14 (Dr. Kristal) CDC 7230, Interdisciplinary Progress Note Specialty Clinic

46. 5-6-14 (Dr. Kristal) CDC-128C, Accommodation Chrono

1    47.    5-6-14 (Unknown) CDC 240-B, Inmate Authorization To Pay for Eye Glasses,

2            Prosthesis, Artificial Appliances

3    48.    5-6-14 (Unknown) CDC 7230, Medical Equipment/Supplies Receipt

4    49.    Unknown (Unknown) Interim CDC Form #XXX, Problem List

5    50.    5-1-13 (Susan Mendoca) Declaration of Case Records Supervisor

6    51.    5-18-13 (Alma Vieyra) Declaration of Custodian of Records

7    52.    Dec. 2003 (CDC) Chapter 16, Health Care Services Manual, 2 Pages

8    53.    Dec. 2003 (CDC) Chapter 18, Health Care Services Manual

9    54.    Jan. 2012 (PVSP) Operations Procedure #9, Prosthesis, Medical Equipment and

10          Appliances, 4 Pages

11   55.    Apr. 2005 (PVSP) Operations Procedure #64, Use of Force Review Procedures, 7

12          Pages

13   56.    May 2006 (PVSP) Operations Procedure #123, Medical Evaluation of Inmates

14          Involved in Assaults, . . . Or Use of Force, 2 Pages

15   57.    5-29-06 (Harbridge) CDC 602, #06-01738, 7 Pages

16   58.    8-29-06 (Harbridge) CDC 602, 4 Pages

17   59.    10-6-06 (Harbridge) CDC 602, 8 Pages

18   60.    11-3-06 (Harbridge) CDC 602, #07-00137, 11 Pages

19   61.    4-30-15 (Hall) Declaration

20   62.    4-29-15 (C/O Lee) Declaration

21   63.    4-30-15 (Sgt. McBride) Declaration

22   64.    4-30-15 (Lt. Herrera) Declaration

23   65.    2-14-14 (Harbridge) Deposition Transcripts, Pages 152-206

24   66.    Apr. 2014 (Harbridge) Errata Sheet

25   B.    Defendant's Exhibits

26   1.    Plaintiff's Inmate Movement History at PVSP

27   2.    Rules Violation Report Log No. 06/FA-05-009

28   3.    Crime/Incident Report (CDCR 837) Log No. PVP-FAP-06-05-0235

1      4.       Order for Modified Program Status, General Chrono (CDC 128-B), May 2, 2006

2      5.       Inmate/Parolee Appeal Log No. PVSP-06-1738 (through all levels)

3      6.       Inmate/Parolee Appeal Log No. PVSP-07-0137 (through all levels)

4      7.       Plaintiff's Relevant CDCR Medical Records from May to December 2005,

5               including but not limited to:

6               a.  Hall's Medical Report of Injury or Unusual Occurrence (CDC 7219), May 2,

7                   2006

8               b.  Hall's Interdisciplinary Notes, May 2, 2006

9               c.  Plaintiff's Health Care Services Request Form (CDC 7362), May 4, 2006

10              d.  Engbrecht's Encounter Form, May 5, 2006

11              e.  Engbrecht's Physician's Orders, May 5, 2006

12              f.  Harrod's and Benyamin's Interdisciplinary Progress Notes, May 5, 2006

13              g.  Ferro's Outpatient Interdisciplinary Progress Notes, May 5, 2006

14              h.  Benyamin's Health Care Services Physician's Request for Services (X-rays),

15                   May 5, 2006

16              i.  Benyamin's Health Care Services Physician's Request for Services (Sports

17                   Medicine), May 5, 2006

18              j.  Benyamin's Interdisciplinary Progress Notes, May 9, 2006 (3:00 p.m.)

19              k.  Benyamin's Interdisciplinary Progress Notes, May 9, 2006 (6:18 p.m.)

20              l.  Benyamin's Health Care Services Physician's Request for Services, May 9,

21                   2006

22      8.       Plaintiff's medical records from Community Regional/University Medical Center

23               for May to June 2006

24      9.       Abstract of Judgment for plaintiff's committed offense

25     10.    Declaration of Custodian of Records of plaintiff's central file records with CDCR

26     11.    Declaration of Custodian of Records of plaintiff's medical file records with CDCR

27 /////

28 /////

16

X.      DISCOVERY DOCUMENTS TO BE USED AT TRIAL

Plaintiff does not intend to offer at trial any answers to interrogatories, or responses to requests for admissions.  Plaintiff does intend to offer at trial pages 152 to 206 of the transcripts from his deposition taken February 14, 2014, and the errata sheet pertaining to his deposition.

Defendants might use plaintiff's deposition transcript, taken on February 14, 2014, and his responses to interrogatories and admissions requests at trial for impeachment purposes.

XI.     FURTHER DISCOVERY OR MOTIONS

None.

XII.    STIPULATIONS

Plaintiff proposes stipulating to the facts he listed as undisputed in his pretrial statement.

Defendants are willing to stipulate to the authenticity of plaintiff's unaltered records from his central and medical files maintained by CDCR and any CDCR record generated and maintained in the regular course of business, which may be used as exhibits at trial.  Defendants reserve the right to object to such exhibits on other grounds.

XIII.   AMENDMENTS/DISMISSALS

Plaintiff requests permission to serve former defendants Benyamin and Ferro and to reinstate Claims 19 and 21 as described in his motion *in limine*.  (Doc. 145, p. 15.)  To the extent plaintiff raises this request in his motions *in limine*, it will be addressed on the first day of trial. However, plaintiff also raised this issue in a motion (Doc. 147) he filed concurrently with his pretrial statement, which will be addressed by separate order of the court.

Defendants indicate that there are no amendments/dismissals.

XIV.    SETTLEMENT NEGOTIATIONS

An unsuccessful settlement conference was conducted by United States Magistrate Judge Stanley A. Boone.  No additional settlement conference would appear likely to lead to resolution of this action and, therefore, none will be set.

XV.     AGREED STATEMENT

Plaintiff is willing to stipulate to the facts that he lists as undisputed in his pretrial statement.  In light of that position, defendants do not believe an agreed statement of facts is

feasible.

XVI.     SEPARATE TRIAL OF ISSUES

Plaintiff requests a hearing to determine whether a written statement by R.N. Sheree Engbrecht is based on her personal knowledge or hearsay.[9]

Defendants request bifurcation on the issue of the amount of punitive damages in the event the jury finds any defendant acted with malice, oppression, or in reckless disregard of plaintiff's constitutional rights.

XVII.    IMPARTIAL EXPERTS – LIMITATION OF EXPERTS[10]

Plaintiff requests the Court appoint "an impartial medical expert witness who is a podiatrist." (Doc. No. 145, p. 16.)

While the Court has the discretion to appoint an expert and to apportion costs, including the apportionment of costs to one side, Federal Rule of Evidence 706; *Ford ex rel. Ford v. Long Beach Unified School Dist.*, 291 F.3d 1086, 1090 (9th Cir. 2002); *Walker v. American Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999), where the cost would likely be apportioned to the government, the Court should exercise caution. The Court's docket is comprised of an overwhelming number of civil rights cases filed by prisoners proceeding pro se and in forma pauperis, and the facts of this case are no more extraordinary and the legal issues involved no more complex than those found in the majority of the cases now pending before the Court. *Wilds v. Gines*, No. C 08-03348 CW (PR), 2011 WL 737616, at *4 (N.D. Cal. Feb. 23, 2011); *Honeycutt v. Snider*, No. 3:11-cv-00393-RJC (WGC), 2011 WL 6301429, at *1 (D. Nev. Dec. 16, 2011) ("The appointment of experts in deliberate indifference cases is rare, and such requests should be granted sparingly, particularly given the large volume of cases in which indigent prisoners allege claims under the Eighth Amendment related to medical care, and the substantial expense defendants may have to bear if courts were to appoint experts in such cases.")

---

[9] Plaintiff indicates that he raised this in his first motion *in limine* which will be ruled on the first day of trial.

[10] Plaintiff notes that his first motion *in limine* requests that defendants be limited to calling only one medical expert. As indicated above, all motions *in limine* will be ruled on the first day of trial.

Moreover, the appointment of an expert witness under Rule 706 is intended to benefit the trier of fact, not a particular litigant, and here, the medical care issue is not of such complexity that the court requires the assistance of a neutral expert at the summary judgment stage. *Faletogo*, 2013 WL 524037, at *2; *Bontemps v. Lee*, No. 2:12-cv-0771 KJN P, 2013 WL 417790, at *3-4 (E.D. Cal. Jan. 31, 2013); *Honeycutt*, 2011 WL 6301429, at *1; *Wilds*, 2011 WL 737616, at *4; *Gamez v. Gonzalez*, No. 08cv1113 MJL (PCL), 2010 WL 2228427, at *1 (E.D. Cal. Jun. 3, 2010).

Plaintiff provides no basis for appointment of an expert under Rule 706 and the Court finds none. Therefore, plaintiff's request for the Court to appoint a podiatric medical expert is denied.

XVIII. <u>ATTORNEY'S FEES</u>

None.

XIX. <u>TRIAL EXHIBITS</u>

Neither side anticipates at this time that there will be a need for any special handling of trial exhibits.

Defense counsel SHALL retain the exhibits pending any appeal in this action.

XX. <u>TRIAL PROTECTIVE ORDER</u>

Neither side intends to seek a protective order. Defendants do not believe one is necessary as no confidential information will be disclosed during trial.

XXI. <u>MISCELLANEOUS</u>

    A.     <u>Further Trial Preparation</u>

        1.     <u>Motions *In Limine*</u>[11]

            a.     <u>Briefing Schedule</u>

Any party may file a motion *in limine*, which is a procedural mechanism to limit in advance testimony or evidence in a particular area. *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (quotation marks omitted). In the case of a jury trial, the court's ruling gives

---

[11] Plaintiff's first motion *in limine* (Doc. No. 148) filed March 2, 2017 is currently pending before the court.

plaintiff and defendant's counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury. *Id.* at 1111-12 (quotation marks omitted).

Any motion *in limine* must be served on the other party, and filed with the court by **April 18, 2017.** Any motion *in limine* must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial.

Any opposition to a motion *in limine* must be served on the other party, and filed with the court by **April 25, 2017.**

Motions *in limine* will be heard on the morning of the first day of trial.

The court does not favor the filing of motions *in limine* addressing evidentiary issues that may not actually arise at trial. Moreover, motions *in limine* often cannot be ruled upon until other evidence has been admitted at trial and the context for the evidence in question is established. **Accordingly, whether or not a party files a motion *in limine*, that party may still object to the introduction of evidence during the trial.**

       2.   <u>Other</u>

          a.   <u>Trial Briefs</u>

The parties are relieved of their obligation under Local Rule 285 to file a trial brief. If the parties wish to submit a trial brief, they must do so on or before **April 25, 2017.**

          b.   <u>Verdict Form</u>

The court will prepare the verdict form, which the parties will have the opportunity to review on the morning of trial. If the parties wish to submit a proposed verdict form, they must do so on or before **April 25, 2017.**

          c.   <u>Jury Instructions</u>

The court will prepare the jury instructions, which the parties will have the opportunity to review on the morning of trial. Defendant shall file proposed jury instructions as provided in Local Rule 163 on or before **April 25, 2017.** Plaintiff is not required to file proposed jury instructions but if he wishes to do so, he must file them on or before **April 25, 2017.**

/////

The parties shall use Ninth Circuit Model Civil Jury Instructions to the extent possible. Otherwise, BAJI or CACI instructions may be used where the subject of the instruction is covered by BAJI or CACI. All instructions shall be short, concise, understandable, and neutral and accurate statements of the law. Argumentative or formula instructions will not be given and must not be submitted. Quotations from legal authorities without reference to the issues at hand are unacceptable.

The parties shall, by italics or underlining, designate any modification of instructions from statutory or case authority, or any pattern or form instruction, such as the Ninth Circuit Model Jury Instructions, BAJI, CACI, or any other source of pattern instructions. The parties must specifically state the modification made to the original form instruction and the legal authority supporting the modification.

The court will not accept a mere list of numbers of form instructions from the Ninth Circuit Model Jury Instructions, CACI, BAJI, or other instruction forms. The proposed jury instructions must be in the form and sequence which the parties desire to be given to the jury. All blanks to form instructions must be completed. Irrelevant or unnecessary portions of form instructions must be omitted.

All jury instructions shall indicate the party submitting the instruction (e.g., plaintiff or defendant), the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the text of the instruction, and the legal authority supporting the instruction. Defendant shall provide the court with a copy as well as a clean copy (without number, title or authority) of his proposed jury instructions via e-mail at: dadorders@caed.uscourts.gov.

d.      Proposed *Voir Dire*

Proposed *voir dire* questions, if any, shall be filed on or before **April 25, 2017,** pursuant to Local Rule 162.1.

e.      Statement of the Case

The parties may serve and file a non-argumentative, brief statement of the case which is suitable for reading to the jury at the outset of jury selection on or before **April 25, 2017.** The

court will consider the parties' statements but will draft its own statement. The parties will be provided with the opportunity to review the court's prepared statement on the morning of trial.

### f. Trial Exhibits

The original and two copies of all trial exhibits, along with exhibit lists, shall be submitted to Courtroom Deputy Renee Gaumnitz no later than **April 25, 2017**. Plaintiff's exhibits shall be pre-marked with the prefix "PX" and numbered sequentially beginning with 100 (e.g., PX-100, PX-101, etc.). Defendant's exhibits shall be pre-marked with the prefix "DX" and numbered sequentially beginning with 200 (e.g., DX-200, DX-201, etc.).

**The parties are required to meet and confer, by telephone or other means, to agree upon and identify their joint exhibits, if any.** Joint exhibits shall be pre-marked with the prefix "JT" and numbered sequentially beginning with 1 (e.g., JT-1, JT-2, etc.), and defendant's counsel shall submit the original and two copies of the joint trial exhibits, with exhibit lists, no later than **April 25, 2017.**

## XXI. ESTIMATED TIME OF TRIAL/TRIAL DATE

Jury trial is set for May 2, 2017 at 1:00 p.m. in Courtroom 5 before the Honorable Dale A. Drozd. Trial is anticipated to last for two to three days. The parties are directed to Judge Drozd's standard procedures available on his webpage on the court's website.

Counsel are to call Renee Gaumnitz, courtroom deputy, at (559) 499-5652, one week prior to ascertain the status of the trial date.

## XXII. OBJECTIONS TO PRETRIAL ORDER

Written objections to the pretrial order, if any, must be filed on or before **seven (7) days** after the date this order issues. Such objections shall specify the requested modifications, corrections, additions or deletions.

## XXIII. COMPLIANCE WITH PRETRIAL ORDER

Compliance with this order and its explicit requirements is mandatory. The court will strictly enforce the requirements of this pretrial order, and counsel and parties are subject to sanctions for failure to fully comply with this order and its requirements. The court will modify the pretrial order "only to prevent manifest injustice." Fed. R. Civ. P. 16(e). The court

22

admonishes the parties and counsel to obey the Federal Rules of Civil Procedure and the court's Local Rules and orders. Failure to do so will subject the parties and/or counsel to sanctions as the court deems appropriate.

IT IS SO ORDERED.

Dated: __**April 10, 2017**__

_Dale A. Drozd_

UNITED STATES DISTRICT JUDGE